DAVIS-FISHER CO. *v.* HALL.

1. BROKERS—COMMISSIONS—CONTRACTS.

The owner of real property, who, after giving to a broker the agency to sell his land on commission, interferes with a prospective buyer, cancels the broker's authority, and, knowing that negotiations for a sale are under way, effects the sale of his property by abating his price, is liable to the broker for the agreed commission or compensation.[1]

2. SAME—VENDOR AND PURCHASER—MINIMUM PRICE.

Where the owner of a house listed it with plaintiff, a broker firm, and, meeting a prospective buyer to whom plaintiff had shown the realty on the previous day, informed the buyer that the firm had no authority to sell it and named a price which was less than plaintiff claimed he had fixed in his conversation with the firm, when it was claimed he had stated that he would allow plaintiff all it could obtain over $2,800 as its commission, a verdict for the commissions of the broker was warranted by the testimony.

OSTRANDER and BIRD, JJ., dissenting.

Error to Calhoun; North, J. Submitted June 16, 1914. (Docket No. 74.) Decided October 2, 1914.

Assumpsit by the Davis-Fisher Company against George L. Hall for broker's commissions. Judgment for plaintiff. Defendant brings error. Affirmed.

*Howard W. Cavanagh,* for appellant.

*Stewart & Jacobs,* for appellee.

[1] The question of the effect upon the right to commission, of the fact that the owner sells to broker's customer at reduced price is discussed in notes in 15 L. R. A. (N. S.) 272 and 34 L. R. A. (N. S.) 1050. And as to when real estate broker is considered as procuring cause of sale or exchange which will entitle him to commission, see note in 44 L. R. A. 321.

STEERE, J.   This action was begun in justice's court
and removed by appeal to the circuit court of Calhoun
county, where a retrial by jury resulted in a verdict
and judgment for plaintiff in the sum of $50, being
the amount of a commission found due for sale of a
house and lot.   Defendant was a contractor and builder
residing in Battle Creek, Mich., engaged, in part at
least, in building houses upon lots which he owned
and selling the property thus improved.   Plaintiff was
a company or firm engaged in the business of selling
real estate on commission in said city.

It is undisputed that some negotiations were had
between the parties touching plaintiff's making sale
for defendant of the property in question.   Plaintiff
claimed and introduced testimony tending to show that,
when the house was approaching completion, defend-
ant first listed the property with plaintiff to sell on
commission for $3,000; that some effort was made by
the firm to sell the same at that price, and it was shown
to various parties without results, the difficulty being
that the price was rather high; that later, on being
asked his lowest net cash price, defendant placed it
at $2,800, plaintiff's commission to consist of what-
ever could be obtained above that figure, and plaintiff,
accepting the proposition, thereafter continued efforts
to sell the property for $2,875.        .

Admitting that there was some talk with members
of the firm in relation to the sale of this property, and
that he had visited plaintiff's office to talk about it,
defendant denied that he ever listed the property with
plaintiff or gave it any authority to sell the same for
him, and testified as to the price given as follows:

"I told him (Davis) that I would give him until the
next day at 6 o'clock to get me $2,800 net.   I never
heard from him again in regard to that, though he
brought a man by the name of Veeder some time later;
I cannot tell just when.   He brought him there two

different times; the first time I did not give him any encouragement, because he had no money, and the second time I told him I thought I had sold the property to a man by the name of Patterson."

Members of the plaintiff firm testify and prove by others that they had at various times shown and offered the property to different parties up to the time it was sold by defendant to one Patterson, a prospective purchaser whom they first found and to whom they had shown the property, offering it to him for $2,875. Patterson was a baggageman on the Grand Trunk railway, and Davis, a member of the plaintiff company, learning he was thinking of buying a place, solicited him as a customer and took him, with his wife and daughter-in-law, in an automobile to look at property the firm had for sale, showing them this house and lot among others. Of what took place, Patterson testifies in part:

"I told him before I started $2,000 was as high as I would go for a place. * * * They gave me different prices for different property, $2,800, $2,500, $2,750 for another one. * * * The Davis-Fisher price (for this property) was $2,875. I made them no reply. * * * Mr. Davis said about this house that it was a very nice house, and he would recommend the contractor very highly, and that the house was well built, and he would be glad to.show me through it. I said I did not care to go through the house because it was above my price. * * * He done most of the talking, and my wife was with me and my daughter-in-law. * * * I told him if he had no objections I would look at these different places the next morning, and if I found anything that suited me, I would come back the next morning, and if not, there was nothing doing."

This was on October 23d; the following day, October 24th, Patterson visited the property and there met defendant. The place apparently suited him, and there was something "doing," but he did not go back to plaintiff. He informed defendant that Mr. Davis

had shown him the place, and was answered that no real estate firm had the property for sale; that defendant owned it and would sell it for $2,800. Patterson thereupon dealt with defendant and bought the property of him at that price. Being asked, "And you bought it because Mr. Hall represented to you that Davis-Fisher Company did not have it for sale?" he answered, "That is the idea exactly."

After the sale was consummated, defendant denied that he had listed the property with plaintiff and refused to pay any commission. Plaintiff demanded a commission of $75 for having first found a prospective purchaser who was favorably disposed to the property and was examining it on plaintiff's solicitation and offer, which had not been refused, when defendant interfered and consummated the sale himself.

In submitting the case to the jury, the court charged them that, if plaintiff had failed to show, by a preponderance of evidence, that the property was in its hands, listed for sale by defendant, there could be no recovery in any event, and, amongst other things, gave the following instructions, upon portions of which error is assigned:

"And I say to you along that line, if an owner places his property in the hands of a real estate broker for sale, it is the duty of the owner to deal honestly and fairly with the broker, and it is the right of the broker, on finding a prospective customer, to deal with such customer until a sale is made, or until the customer has refused to purchase, at least during a reasonable period of time; and if the owner voluntarily interferes with such sale, and induces the prospective purchaser to deal directly with him, and by such interference and direct dealing the owner is able to sell to the customer whom the broker has interested in the property, then I charge you it becomes the duty of the owner to pay the agreed commission to the broker, and in that case if you find that the owner, Mr. Hall, knew that

the plaintiff was negotiating with Mr. Patterson, and Mr. Hall voluntarily solicited Mr. Patterson to purchase the property before the negotiations between Mr. Patterson and the plaintiff were broken off, and by such solicitations did sell the property to Mr. Patterson, then I charge you plaintiff should recover. If you find the defendant placed the property in plaintiff's hands for sale, and if the plaintiff is entitled to recover in this case, the measure of recovery would be this: That the defendant should pay to it the ordinary amount paid for commissions for such sales. The testimony in this case being that they varied from $2\frac{1}{2}$ to 3 per cent. of the purchase price, bearing in mind that the amount awarded cannot exceed the sum of $75, because under plaintiff's own statement of this case, had it been enabled to consummate this deal with its prospective customer, its profit would only have been $75, therefore, under the circumstances, it cannot recover more than that."

It is well settled, by abundant authority in this State and elsewhere, that when a real estate owner, who has given to a broker an agency to sell lands on commission, with knowledge that such broker has found and is negotiating for a sale with a prospective purchaser, steps in, cancels the broker's authority, and himself effects a sale to the broker's customer by an abatement of the price, the broker is entitled to his commission. *Heaton* v. *Edwards*, 90 Mich. 500 (51 N. W. 544) ; *McGovern* v. *Bennett*, 146 Mich. 558 (109 N. W. 1055) ; *Glascock* v. *Vanfleet*, 100 Tenn. 603 (46 S. W. 449). Many authorities on the subject of the effect of a principal's default, negligence, or fraud on a broker's commission are collected in the annotation of *Brackenridge* v. *Claridge & Payne* (Tex.), found in 43 L. R. A. 593. The spirit and reason of this doctrine is well sustained by the cases cited under "Principal's Interference with Broker," on page 606 of 43 L. R. A.

The jury found as a fact in this case, with abundance

of testimony to support the finding, that defendant did list the property with plaintiff for sale. If so, and it must be taken as true in considering further questions, he deceived Patterson, plaintiff's prospective customer, and through falsehood induced him to deal with himself by stating that he sold his own property, that the house and lot belonged to him, and no real estate firm had it for sale, knowing at the same time that Patterson's then presence on the premises was the result of Davis' having shown and offered to sell him the place.

Defendant contends that, by the alleged terms of its agency, plaintiff's right to a commission depended squarely upon its ability to sell the property for a greater sum than $2,800, which it failed to do, and no right could arise from the fact that defendant subsequently sold it for a less price than plaintiff offered it, to the party with whom plaintiff had unsuccessfully negotiated—citing *Gilmore* v. *Bolio*, 165 Mich. 633 (131 N. W. 105, 34 L. R. A. [N. S.] 1050) ; *Wood* v. *Smith*, 162 Mich. 334 (127 N. W. 277.) In the latter case the question involved was whether a broker was the procuring cause of sale, and it was held under the testimony to be a question of fact properly submitted to the jury. It is undisputed in this case that plaintiff cannot recover unless it is shown to be the procuring cause of the sale. In *Gilmore* v. *Bolio, supra,* the facts more closely resemble those in the instant case, with the marked distinction that the deal was off, and all negotiations between the broker and prospective purchaser had ended by a refusal of the latter to buy the property on the terms proposed. Six weeks later he bought it of the owner for a less price. No interference of the principal with pending negotiations of a broker was involved there, which is the gist of this case.

It is urged that no customer is shown to have been produced willing to pay more than $2,800 for the prop-

erty; that Patterson did not negotiate with Davis for this property, but, on the other hand, in effect refused it, saying nothing in reply to Davis' laudation of it, except that $2,875 was above his price, and therefore a verdict should have been directed for defendant on the ground that plaintiff had not made a *prima facie* case by its proofs. Error is also assigned on refusal of the court to allow Patterson to answer questions as to his intent, and whether he would have paid more than $2,800 for the property, a contingency which he never was called upon to decide, owing to defendant's interference.

Is defendant in a position to say that plaintiff would not have made the sale? It is undisputed that Davis, for plaintiff, first secured Patterson as a possible customer who had intimated a desire to purchase a house and lot, and took him with members of his family to look at places plaintiff had for sale; that, amongst others, he drew their attention to this property and urged its desirability, stating the price asked for it. Patterson discreetly looked and listened and said little or nothing as to this or any other property, so far as shown. It was but a natural initiation of negotiations. He guardedly stated that the next morning he would look over the properties which had been pointed out for sale, and, if he found anything to suit him, would pursue the subject. That he was then favorably impressed with this property and, knowing the price asked, went back to look it over, was suited with it, and bought it of the owner at the price he first asked, which was but $75 less than that asked by plaintiff, is at least evidence for a jury that plaintiff was not only the moving cause of the subsequent sale made by defendant, but that it had so interested Patterson in the property, when showing it to him, that he was yet a promising prospective purchaser, who not only had not refused plaintiff's offer, but with whom it might

well pursue negotiations with fair prospects of success, but for the fact that on the very next morning defendant, meeting him for the first time, and learning that he was examining the property at the instance of plaintiff, cut off further negotiations with it and all possibility of its effecting a sale by denying its agency, reducing the price, and inducing the customer to deal with him. Under such circumstances, when it is found as a fact that defendant had listed the property with plaintiff, we do not think it reversible error to exclude the then unexpressed and untested thought or intent of the purchaser as to a future contingency rendered impossible by defendant's conduct, nor is defendant's claim that the sale could not have been consummated by plaintiff, of conclusive force because, conceding defendant had listed the property with the broker, he is seeking by such claim to take advantage of his own wrong and interpose his own bad faith in his defense. There was abundant evidence to support plaintiff's claim that it was the moving cause of the sale made, and that defendant wrongfully interfered with and broke up plaintiff's pending negotiations with a prospective customer, and made the sale himself, thereby becoming liable to plaintiff for its commission. The case was one for a jury, and was submitted under proper instructions.

Upon the record, taken as a whole, we find no reversible error, and are of the opinion the judgment should be affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, and MOORE, JJ., concurred with STEERE, J.

OSTRANDER, J. (*dissenting*). In my opinion, my Brother STEERE has not answered the contention of appellant that there is no testimony tending to prove that plaintiff could have sold the property to Patterson or to anybody for more than $2,800. Unless it made

a sale for a greater sum, plaintiff was not entitled to a commission. Plaintiff had no exclusive right to sell the property. It knew the owner's price and that it or any one could secure the property from the owner, at any time, for $2,800. A jury has awarded plaintiff a commission of $50, but upon no testimony that plaintiff might have sold the property to Patterson for $2,850. The testimony just as well sustains an award of $75, or of $25, or of $5. It is evident the jury thought defendant had acted rather meanly, and that he ought to pay something on account of his behavior. But plaintiff sued to recover a commission, which, because of defendant's improper action, it had lost..

The judgment should be reversed, and no new trial granted.

BIRD, J., concurred with OSTRANDER, J.