**326** GAILLARD REALTY CO., INC., *v.* ROGERS WIRE WORKS, INC.

First Department, February, 1926. [Vol. 215

---

GAILLARD REALTY COMPANY, INC., Appellant, *v.* ROGERS WIRE WORKS, INC., Respondent.

First Department, February 5, 1926.

Brokers — real estate broker — action for commission — defendant executed contract appointing plaintiff as sole selling agent — contract provided that all inquiries received by defendant should be referred to plaintiff — prior to termination of contract defendant sold property through its own efforts — contract was exclusive sales contract and plaintiff was entitled to commission on sale made by defendant.

A contract entered into by the defendant, the owner of real property, with the plaintiff, a real estate brokerage corporation, which provides that the plaintiff

was employed exclusively as agent to sell the property and that the defendant would " during the term of this agreement " refer " all inquiries with respect to said property " to the plaintiff, constitutes an exclusive sales contract with the plaintiff entitling it to commission on a sale made prior to the termination of the contract by the defendant without the knowledge or intervention of the plaintiff or the intervention of any other real estate broker. The provision in the contract that all inquiries received by the defendant should be referred to the plaintiff indicates a clear intent that the plaintiff was to receive a commission on any sale of the property made during the period of the contract. That it was the intention of the parties that the plaintiff should act as exclusive sales agent is clearly indicated by the practical construction of the contract by the parties themselves, which shows that several inquiries received by the defendant were referred to the plaintiff for its action.

APPEAL by the plaintiff, Gaillard Realty Company, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 7th day of April, 1925, upon a verdict rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that a verdict be directed with the same force and effect as though a jury were present.

*Jackson, Fuller, Nash & Brophy* [*Charles B. Brophy* of counsel], for the appellant.

*Clarence DeWitt Rogers,* for the respondent.

MERRELL, J.   The action is brought by the plaintiff corporation, engaged in the business of buying and selling real property, to recover of the defendant the sum of $2,260, besides interest. Plaintiff complains upon two causes of action, the first being to recover the balance due on commissions of $2,260 alleged by the plaintiff to be its due upon the sale of certain real property of the defendant given to the plaintiff to sell as a real estate broker. The second cause of action set forth in the plaintiff's complaint is to recover the sum aforesaid as damages alleged to have been sustained by the plaintiff by reason of defendant's breach of contract employing the plaintiff as its real estate broker. The plaintiff is a domestic corporation engaged in the real estate brokerage business and specializing in leasing and selling factory properties on a commission basis. The defendant is likewise a domestic corporation and was the owner of certain factory property at Belleville, in the State of New Jersey. Prior to November 30, 1923, the defendant had listed its said property for sale with the plaintiff. On said date an agreement in writing was entered into between the plaintiff and defendant in the form of a letter signed by the plaintiff and addressed to the defendant, and in which the defendant in writing concurred and agreed, in the following form:

First Department, February, 1926.                [Vol. 215

" GAILLARD REALTY COMPANY, INC.
" Brokers
" Associated Engineers and Factory Specialists
" 68 William Street, New York.

"*Nov.* 30 /23.

" CLARENCE DEWITT ROGERS, Esq.,
" 36 West 44th Street,
" New York, N. Y.

" DEAR SIR.— This is to confirm our understanding of the agreement between us with respect to the matter of the sale of your property located at Belleville, N. J.

" We hereby agree to use our best efforts to bring about a sale of this property and to advertise it and you hereby agree to employ us exclusively as your agents for the sale of said property. This agreement is subject to termination by either party on 60 days prior written notice to the other. You further agree that during the term of this agreement all inquiries with respect to said property are to be referred to us.

" In the event of a sale of this property without the assistance of an outside broker we are to receive for our services upon the closing of title a sum equal to 5% of the total amount involved. In the event of a sale being effected through another broker, the commission payable by you to us upon the closing of title is to be $7\frac{1}{2}\%$ of the total amount involved, the purpose being to enable us to offer a full commission of 5% to any broker who may procure a purchaser for the property. It is understood that commissions are earned when bargain is effected but payment is deferred as above stated.

" If the above foregoing is in accordance with your understanding of the agreement between us, will you kindly so indicate by signing this letter at the lower left hand corner under the words, ' The foregoing is correct and is hereby agreed to.'

" Very truly yours,
" GAILLARD REALTY CO., INC.,
" R. S. HARNSBERGER,
"*Vice-President.*

" ' The foregoing is correct
and is hereby agreed to.'
" ROGERS WIRE WORKS, INC.
" C. D. W. ROGERS,
"*President.*"

Following the writing of the above letter and its confirmation by the defendant, the plaintiff at once became active in an effort to dispose of the defendant's said factory property. The price originally asked by the defendant was $125,000. From time to time the

defendant reduced said price and being unable to obtain the price originally asked the defendant through its president expressed willingness to accept as low a price as $55,000 in cash for the property, and on another occasion, according to the testimony of one of plaintiff's employees who had been active in the plaintiff's efforts to dispose of the property, the defendant's president stated that if someone " would put $50,000 on the counter net to him, he would be inclined to accept it." This testimony was not denied by the president of the defendant. Following the making of the said contract whereby the plaintiff was employed as the exclusive agent of the defendant for the sale of the property, the plaintiff advertised the property extensively in newspapers and by circularization, made frequent trips to the property, and through its representatives interested other brokers in the proposition as well as many prospective purchasers. A considerable amount of labor, time and expense were incurred in the efforts of the plaintiff and its employees and representatives to dispose of the said property of the defendant. As inquiries were made to the defendant concerning the property they were referred to the plaintiff. Among other offers submitted by the plaintiff to the defendant during the period of plaintiff's activities was an offer of $55,000 cash or $57,000 on terms, made by the Atlantic Surgical Cotton Company. At the time said offer was received the defendant was considering a cash proposition which had been made through a former superintendent of the defendant. Plaintiff's president secured a tentative offer from the Atlantic Surgical Cotton Company of $55,000 cash and $57,000 on terms for the property and immediately made known said offer to the president of the defendant, who informed plaintiff's president that he could not accept the proposition at that time because he had a good opportunity or prospect of selling the property for cash, and that he preferred to wait a short time in order that he might determine whether the cash offer which he believed he would have would materialize; that the offer which he was considering was something over $50,000 cash, and that the offer came to him through his former superintendent. Plaintiff's president testified that he pointed out to the president of the defendant that so far as plaintiff was concerned it was merely a matter of the degree of plaintiff's commission if the sale then being considered by the president of the defendant should go through, because, under the contract between the parties, if defendant's superintendent was a real estate broker and effected the sale the plaintiff would be entitled to only two and one-half per cent commission; that defendant's president replied that the plaintiff would be paid a commission in any event, and that in view of the contract

between the parties it was only a question of whether the plaintiff received a full commission or less than a full commission. The offer which the president of the defendant had under consideration did not materialize, and the plaintiff then attempted to close with the Atlantic Surgical Cotton Company upon its offer of $55,000 cash or $57,000 on terms, defendant's president having informed the president of the plaintiff that if the offer which he was considering fell through he would be very glad to accept the offer of the surgical company even in the alternative form. A contract thereupon was prepared with the surgical company, but after a delay of a few days the latter company refused finally to execute the contract and the sale fell through. Thereafter and under date of July 2, 1924, the defendant, through its president, notified the plaintiff in writing that plaintiff's agency for the sale of the factory was terminated. Notwithstanding receipt of such notice, the plaintiff during the following sixty days continued its efforts under its contract to dispose of the property, and Walter B. Olive, who was connected with the plaintiff, testified that within a week after receiving the written notification of the termination of plaintiff's agency, he had a conversation with the president of the defendant and that he then told the defendant's president that the plaintiff was still using every possible effort to market the property, and asked him if, during the period of his intended absence on his summer vacation, they had any offers what should be done with them, and to which the president replied: " Well, you can correspond with my office; " that at that time Olive mentioned to the president of the defendant that the contract had still sixty days to run from the period of the notice terminating the agency, and that the plaintiff would use every honest effort to market the property, to which statement the defendant's president made no reply. The evidence shows that in the month of August, 1924, and within the sixty-day period after the service of said notice of termination of agency, the defendant, without notifying the plaintiff and without referring to it any inquiries concerning the sale of the property, sold its said plant to Philip J. Murray, Inc., for $50,000. The sale was effected without the assistance of an outside broker and no commission was paid. Plaintiff thereupon demanded of the defendant a commission at the rate of five per cent upon the sale price, or $2,500, less $240 paid by the defendant for advertising the premises, in accordance with the agreement between the parties. The defendant refused to pay said commission and the present action was brought.

There was no evidence given on the part of the defendant, and the facts as above set forth were testified to by the witnesses in

behalf of the plaintiff and were uncontradicted. The plaintiff contends that under the terms of the written contract the plaintiff was appointed the exclusive agent for the sale of the property in question, and that upon a sale thereof was entitled to the commissions earned under the terms of the contract, or, at least, that the plaintiff was entitled upon the facts to recover of the defendant damages measured by the amount of the unpaid commission because of defendant's breach of its contract with the plaintiff. The court held with the defendant that the plaintiff was not, under the terms of the contract, given the exclusive right to sell the property, but was merely appointed the defendant's exclusive agent to sell the same, and that under the law and decisions the defendant, notwithstanding its having appointed the plaintiff its sole sales agent for the property, nevertheless, had a right to sell the property itself, and that in such event might do so without obligation to pay the plaintiff any commission. I think the court erred in thus construing the contract. I cannot read the contract without being convinced that it was the intent of the parties that the plaintiff should be appointed the sole agent for the sale of the property, as stated in the contract, and that to the plaintiff was given the sole right to sell and dispose of the same. In the contract the defendant agreed to employ the plaintiff " exclusively " as defendant's agent for the sale of the property, and further agreed that during the term of the agreement all inquiries with respect to said property were to be referred to the plaintiff. It was provided that the agreement was subject to termination by either party on sixty days' prior written notice to the other. I think a fair construction of the contract is that when the parties agreed that during the term of the contract " all inquiries with respect to said property are to be referred to us [plaintiff] " they clearly meant that the defendant was to make known to the plaintiff any opportunity which came to the defendant to dispose of the property to a prospective purchaser during the term of the agreement. Otherwise, there would be no force whatever to the provision of the contract that all inquiries with respect to the property were to be referred to the plaintiff. That this was the intent of the parties is fully borne out by the fact that the defendant did refer to the plaintiff offers which it received for the property. The construction thus given to the contract by the parties was of the utmost importance. Plaintiff's president was asked: " Q. I show you a letter from the president of the defendant company dated February 25, 1924, and ask you if the defendant had on a previous occasion referred inquiries as called for by the contract? A. Yes, he had previously. It had been the practice to refer any inquiries to us."

On February 25, 1924, the defendant wrote the plaintiff as follows:

" 36 West 44th Street

"*February 25th,* 1924.

" Gaillard Realty Company

" 68 William Street

" New York City.

" Gentlemen.— The inclosed inquiry from L. Begulein of 148 East Front Street, Plainfield, N. J., is just received with respect to Rogers Wire Works property. Please answer the same.

" Yours truly,

" ROGERS WIRE WORKS INC.,

"*President.*"

Plaintiff's president further testified without contradiction that in May, 1924, when the defendant was considering the sale of the property to the Atlantic Surgical Cotton Company, a prospective purchaser procured by plaintiff, or to the other prospective purchaser with whom its president was then negotiating and who had been procured by defendant's former superintendent, as follows: " Q. In talking with Mr. Rogers * * * what, if anything, was said as to your being paid a commission on a sale whether the Surgical Cotton Company, or the offer received by him through Mr. Kintzing went through? A. He said that of course we would be paid a commission in any event; that in view of our contract it was only a question of whether we got the full commission or less than a full commission. Q. According to whether another broker acted in the transaction? A. As to whether out of the purchase price another commission had to be deducted."

Thus the parties construed the contract in accordance with the contention of the plaintiff upon the trial and upon this appeal. Not only did the defendant under the terms of the contract refer to the plaintiff inquiries regarding this property, but also admitted its obligation to pay the plaintiff a commission in the event of a sale to a purchaser procured by the defendant or its former superintendent without the intervention or assistance of the plaintiff.

The law is well stated in *Slattery* v. *Cothran* (210 App. Div. 581, 583) as follows: " The general rule is that where an exclusive right of sale is given a broker, the principal cannot make a sale himself without becoming liable for the commissions. (*Moses* v. *Bierling,* 31 N. Y. 462; *Levy* v. *Rothe,* 17 Misc. Rep. 402; 9 C. J. 622.) But where the contract is merely to make the broker the sole agent, the principal may make a sale himself without the broker's aid, if such sale is made in good faith and to some purchaser not procured by the broker." I think in the case at bar the parties clearly

intended that the plaintiff was to have the exclusive right to sell the defendant's property. I cannot read the provision of the contract that " all inquiries with respect to said property " were to be referred to the plaintiff otherwise than as giving the plaintiff the sole right to sell the property.

I am of the opinion under the evidence that the defendant clearly broke its contract with the plaintiff, and that by reason of such breach of contract on the defendant's part the plaintiff became entitled to recover damages measured by the amount of the commissions to which it would have been entitled in the absence of such breach of contract. In *Grant* v. *Abrash* (191 App. Div. 398, 401) this court held, Mr. Justice LAUGHLIN writing, that " In the circumstances the sales made by the defendant in violation of the contract giving the factors and sales agent the exclusive right to handle and sell the goods, afford a proper basis for the computation of the damages." I think the court improperly directed a verdict in favor of the defendant, and that the plaintiff should have received a verdict in its favor for the amount claimed, with interest.

The judgment appealed from should be reversed, with costs, and judgment rendered in favor of the plaintiff, appellant, and against the defendant, respondent, for the sum of $2,260 damages, besides interest and costs.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Judgment reversed and judgment directed to be entered in favor of plaintiff against the defendant for the sum of $2,260, with interest thereon from the 10th day of September, 1924, and with costs.