**HAMMOND v. C. I. T. FINANCIAL CORP.**

No. 189, Docket 22521.

United States Court of Appeals Second Circuit.

Argued March 13, 1953.

Decided April 15, 1953.

Lundgren, Lincoln, Peterson & McDaniel, New York City, for plaintiffs-appellees-cross-appellants; Walter C. Lundgren and J. Kevin Murphy, New York City, of counsel.

Isseks, Laporte & Meyers, New York City, for defendant-appellant-cross-appellee; Alphonse A. Laporte, Lawrence R. Eno, Melbourne Bergerman and Seymour Kleinman, New York City, of counsel.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought by Paul Hammond, a citizen of the State of New York, H. Donald Harvey, a citizen of the State of Connecticut, and Carter M. Braxton, a citizen of the State of New York, copartners doing business under the firm name of The Hammond, Harvey, Braxton Company, against the C. I. T. Financial Corporation, organized under the laws of the State of Delaware, for breach of a contract giving Braxton (hereafter sometimes referred to as the plaintiff) the exclusive right to sell defendant's wholly owned subsidiary corporation, known as the Holtzer-Cabot Division. Federal jurisdiction was invoked because of diversity of citizenship, the amount in controversy exceeding $3,000.

The facts as found by the district court sitting without a jury may be summarized as follows:

In January 1948 the defendant decided to sell its wholly owned subsidiary, Holtzer-Cabot. On January 27, the defendant's vice-president Urquhart approached Braxton with a view to enlisting his services in finding a buyer. The plaintiff was given the exclusive right to negotiate the sale of the Holtzer-Cabot assets. All inquiries were to be referred to him by the defendant, and all negotiations were to be conducted by him. His fee was to be five per cent of the first two million dollars of the sales price with lesser percentages upon amounts received in excess of that sum, but the plaintiff agreed to discuss an adjustment of his fixed commission in the event of "unusual circumstances" attending the sale. The defendant was given the right to terminate the contract at any time it was dissatisfied with the plaintiff's efforts. The parties decided that no written contract was necessary. The plaintiff, who was engaged in the business of acting as broker in the sales of going concerns, prepared a prospectus which he sent to prospective buyers and in some

instances where interest was manifested, he exhibited the plant to the prospect.

On April 13, 1948, Braxton brought a prospective buyer to Urquhart's office. Some interest was indicated on the part of this prospect but no offer was made. Following this interview Braxton was informed by Urquhart that an inquiry had been made on behalf of Redmond Company and that if the company showed any interest, it would be turned over to Braxton. On April 21 the latter was told by Urquhart that an offer of $1,000,000 had been made for the plant and inventory by this prospect and that this offer was the subject of pending negotiations. Braxton said that his late participation in the negotiations which had been initiated by the defendant's president would be futile. The plaintiff was also informed that his position was not affected in any way, but a decrease in his compensation was discussed. Urquhart agreed to consider any offer from the prospect previously introduced by Braxton.

On May 12 the defendant closed the sale of the Holtzer-Cabot plant and inventory to Redmond Company without Braxton's knowledge or intervention; the contract was executed on May 28. The price was $1,165,743.39, of which $65,743.39 was represented by promissory notes. On May 17 Braxton had sent an offer from still another prospect. Later on that day he was told by Urquhart that the contract of sale was being prepared; Braxton's commission was discussed on the theory that "unusual circumstances" had developed when the defendant had consummated the sale itself and a low price had been received. At the trial the price was admitted to be the best then obtainable and to represent the true market value. A compromise commission was rejected by the plaintiff. The plaintiff's brief indicates that a counter proposal for arbitration of the controversy was rejected by the defendant.

The district court further found that except for the eventual buyer all leads were referred to the plaintiff by the defendant; that the defendant never terminated its contract with the plaintiff; and that the plaintiff would have been at least equally successful in negotiating the sale. A judgment of five per cent of the sales price was awarded, with interest from May 28, 1948, for breach of the contract giving plaintiff the exclusive right to sell the property in question.

The defendant's first contention is that the district court erred in finding that the defendant had given the plaintiff an "exclusive right to sell," while agreeing not to sell the property itself. The essentially factual question as to the parties' intention was resolved by the district court in favor of the plaintiff and we think it cannot be said to have been "clearly erroneous." In view of the defendant's agreement to refer all leads to the plaintiff this construction was a reasonable one. See Gaillard Realty Co. v. Rogers Wire Works, Inc., 1st Dep't., 215 App.Div. 326, 213 N.Y.S. 616. The defendant's explanation of the reason for this part of the contract is unconvincing. Moreover, if there was any ambiguity in the agreement, consideration of the parties' own conduct in construing it as entitling plaintiff to his commission (although defendant asserted that the rate must be reduced because of "unusual circumstances") would lead to the same result. See New York Central R. Co. v. New York & Harlem R. Co., 185 Misc. 420, 425–426, 56 N.Y. S.2d 712, affirmed 297 N.Y. 820, 78 N.E.2d 612; cf. Brainard v. New York Central R. Co., 242 N.Y. 125, 133, 151 N.E. 152, 45 A.L.R. 751. The defendant argues that its conduct was not an admission of the existence of a legal obligation to pay a commission, but the trial court's findings do not appear to us to be "clearly erroneous." Further, we agree with the district court that the plaintiff's disinclination to participate in the negotiations already started by the defendant was not conduct inconsistent with his "exclusive right to sell" since he could have been of no particular assistance at that stage and the contract had already been breached by the failure to refer.

The defendant's next contention is that the agreement was terminable at will, and was terminated by the sale even

without notice to the plaintiff. Reliance is placed primarily on the Restatement of Agency, § 449(c). This section, however, relates to unilateral contracts of employment. The district court found that a valid bilateral contract had been formed, citing Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214. Cf. Restatement of Contracts, § 31. We think that Braxton's promise to work intensively, since a speedy sale was desired, and to handle the matter with the utmost discretion may fairly be implied. In return defendant promised that plaintiff was to handle the sale on an exclusive basis and that all leads would be referred to him. Nor was the contract terminable at will because it was indefinite as to time; a reasonable duration may be implied. Moreover, the district court found on sufficient evidence that the contract was only terminable if the defendant in good faith became dissatisfied with the plaintiff's efforts, and in view of the desire for speed such dissatisfaction would naturally arise before too long a period had elapsed. The defendant further argues that a reasonable time had elapsed without a sale being made by the plaintiff and that it had ample grounds for dissatisfaction. However that may be, the trial court found that there was no termination, nor does the defendant contend that it ever gave any notice of termination. Since the contract was not terminable at will, the sale after the defendant breached the contract by its failure to refer can hardly be considered a termination. Cf. Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 384. We see no merit in the contention that the arrangement was so far modified as to put Braxton on a non-exclusive basis in so far as Redmond Company was concerned. He went no further than being willing to follow out his agreement to discuss a reduction in his commission because of the "special circumstances" asserted by the defendant.

■ The defendant also argues that the failure of the lower court to find whether or not there were "unusual circumstances" requires a reversal. It was found that the parties agreed that "in the event of 'unusual circumstances' attending the sale he [plaintiff] would discuss an adjustment of the fixed commission." The defendant contends that this construction, giving it only the right which it would have in any event of "discussing" a reduction, is unrealistic, since the defendant sought protection against unforeseen circumstances and must have intended something more. However, if as the defendant contends there was an agreement to renegotiate the commission, the existence of "unusual circumstances" would leave the defendant with no enforceable legal obligation but with an agreement to agree. Thus the finding that the parties intended only that a discussion in good faith would ensue in the event of "unusual circumstances" is not without a reasonable foundation and we do not think that it was "clearly erroneous." Cf. Cohen & Sons, Inc. v. M. Lurie Woolen Co., 232 N.Y. 112, 114, 133 N.E. 370. The failure to find whether there were in fact "unusual circumstances" within the contemplation of the parties is not reversible error, since even if they were present, plaintiff carried out whatever obligation he had to discuss a reduction, rejecting the defendant's offer of $20,000 but suggesting arbitration.

■ We also think that the district court was right in awarding the plaintiff five per cent of the consideration of the sale as damages for breach of the contract. Gaillard Realty Co. v. Rogers Wire Works, Inc., 1st Dep't., 215 App.Div. 326, 213 N.Y. S. 616; Cf. Slattery v. Cothran, 4th Dep't., 210 App.Div. 581, 206 N.Y.S. 576. The contract was breached by the defendant's failure to refer Redmond to the plaintiff. Since the district court found that the plaintiff would have been as successful in negotiating with Redmond as was the defendant, the damages consist of the loss sustained when Redmond was not referred to the plaintiff, i. e., five per cent of the sales price. Chevrolet Motor Co. v. McCullough Motor Co., 9 Cir., 6 F.2d 212, relied on by the defendant is not in point since the contract there could be cancelled on five days' notice; here the contract was not terminable on notice at any time, but only if the defendant was dissatisfied with

the plaintiff's efforts, and it was not so terminated prior to the breach which gave rise to the damages.

The plaintiff appeals from the failure to award damages based on the right to sell Holtzer-Cabot's accounts receivable. They were initially among the assets which were the subject of the exclusive arrangement between the defendant and the plaintiff. But they were not included in the assets sold by the defendant to Redmond Company; the defendant collected them itself. We fail to understand how the defendant's breach caused the plaintiff any loss as to the assets which were never sold. We find no obligation on the defendant's part to include these assets in the sale, and hence the failure to refer caused the plaintiff no loss. Further, there is no proof that Braxton could have sold the accounts receivable together with the other assets had Redmond Company been referred to him.

Accordingly, the judgment is affirmed.