BOUTALL, Judge.
Latter & Blum, Inc., a real estate broker, seeks recovery of a commission allegedly due under a listing agreement for a lease, contending that the owner breached that provision of the listing agreement stating: “Owner agrees to refer all prospects for the leasing of said property to Agent and Agent shall conduct all negotiations for the leasing of said property.”
Appellant’s sole contention is that Lonnie Blanchard, a Vice-President of International City Bank contacted the building manager of the Grand Lodge of Louisiana during the month of March, 1968, inquiring as to the availability of a lease, and that the building manager did not notify appellant of this contact before the listing expired on April 1, 1968. The trial judge found as one of the bases of his opinion that there was no contact during March, but that the contact took place in April, after the listing expired. Accordingly, he dismissed plaintiff’s suit.
We affirm for two reasons: First, there is ample evidence in the record to support the trial judge’s conclusion and there is no manifest error in this determination; second, under the factual situation in this case, even if the contact was made in March, there was no breach of contract.
The evidence in regard to the contact being made is primarily the testimony of Sheldon Hubbard, the owner’s building manager. He testified that the former building manager had a lengthy illness terminating in his death on February 2, 1968, leaving the records of his office in a confused state. Hubbard became the building manager in March, 1968 and admits that Blanchard contacted him inquiring about the premises. There is considerable confusion in his testimony as to whether he was contacted three times, two times, or only once by Blanchard and whether these contacts took place in March or in April. On direct examination his testimony would indicate two contacts before his inquiry into the existence of a listing agreement with appellant. His testimony on direct examination would indicate that the contact occurred in the first part of April and his inquiry showed that the listing agreement had already expired. In addition to his testimony there were offered some documentary evidence and testimony of other witnesses, some of the evidence favoring the appellant’s version and some the appel-lee’s version. Under these circumstances the trial judge is faced with an assessment of the credibility of the witnesses and the weight that should be assigned to the testimony of the witnesses and the relationship of the documents to that testimony. There is evidence presented which forms the basis of a reasonable conclusion in support of either proposition, and indeed, one could say that the evidence preponderates one way or another depending upon which testimony he chooses to believe. The trial judge gave detailed reasons for judgment and findings of fact. His judgment may not simply be supplanted by our opinion as to the weight and sufficiency of the evidence, but can only be overthrown when there is manifest error in his findings. This type of situation is the classic application of the rule that we should leave that judgment undisturbed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Cote v. Krauss Company, Inc., 323 So.2d 867 (La.App. 4th Cir. 1975); Herzog v. Badilla, 317 So.2d 213 (La.App. 4th Cir. 1975); May v. Finest Foods, Inc., 303 So.2d 192 (La.App. 4th Cir. 1970). This rule is even more compelling in a case such as this where plaintiff is required to prove his case by a preponderance of the evidence. The best interpretation of the evidence favoring plaintiff is that the evidence in this case would support one conclusion just as reasonable as another. If the testimony of the building mana *1196 ger is disregarded entirely, there is no evidence in this case which would show a contact during March, and the controlling evidence would be the inter-office memorandum dated April 8, after the expiration of the agreement.
In addition to the issue stated above, there is another factor to be considered in a determination of this case. This is not the type of case wherein an owner and a prospective tenant have engaged in a conspiracy to deprive the listing agent of its commission or where the owner alone sought that result. The inquiry here is only one single encounter of several over a period of months, and it should be considered in its proper perspective. The prior tenant had notified the owner and the agent (this same agent had secured the prior lease and was receiving commissions under it) in September 1967 of its intention to vacate the premises on March 7, 1968. At that time there was discussion between owner and agent and a loose oral agreement ensued wherein the agent was to get a commission if it secured a new tenant. In October, 1967, some of the agent’s employees contacted International City Bank, which occupied adjacent premises, and discussed the availability of a lease. The testimony of these employees, who were designated as the individuals to handle this account, was that they followed up these initial contacts throughout November, December, January, February and into March with ICB. At the same time, the listing agent attempted to find other tenants and was unsuccessful during the remaining months of 1967, when it decided that if it was granted an exclusive listing contract, it would expend more effort. This resulted in the exclusive listing contract from January 1 to April 1, 1968. The salesmen testified that after this contract was entered into they worked even harder and continued to follow up on the ICB prospect. The record indicates that the owner gave -full cooperation to these salesmen in their efforts and there is not even a hint of interference in their negotiations. Indeed, the employment of this agent was born of personal friendship between some of the officers involved, and the long prior experience of cordial business relationship and mutual profit between the parties over a period of years. If the testimony offered by appellant is to be believed, that its salesmen continued to follow up its initial lead to ICB, it is difficult to see how a telephone inquiry as to availability of the premises to the new building manager, who was entirely unaware of the existence of the listing agreement, could be considered as a breach of contract.
Appellant was well aware that its contract expired on April 1st, and that there was no commission due it unless a lease was produced by that time. The contract contained no saving clause which would permit payment of commission if a prospect with whom it negotiated should later decide to enter a lease, and the owner had refused its request for an extension of the agreement. It is indeed difficult to perceive that a salesman who was interested in obtaining this rather handsome amount in commission, would not have checked towards the end of March with its prospect with whom it had been in negotiation since October. Coincident with this is the fact that these salesmen did not even testify that they had contacted the owner’s new building manager. Under these facts, we cannot conclude that the owner was in breach of contract for the alleged failure of the building manager to notify the agent that an inquiry from ICB was made in March.
The judgment appealed is affirmed.

AFFIRMED.

LEMMON and GULOTTA, JJ., dissented and assigned reasons.