210 N.J. Super. 255 (1985)
509 A.2d 320
THE KISLAK COMPANY, INC. A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
SEYMOUR GELDZAHLER, INDIVIDUALLY AND T/A ALLEN ROAD ASSOCIATES, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided December 19, 1985.
*258 Frederick M. Testa for plaintiff.
Tonita S. Conaghan for defendant.
NEWMAN, J.S.C.
Plaintiff seeks to compel defendant to pay a commission on real estate sold while allegedly under an exclusive sale agreement. The issue presented to this court, not yet addressed in New Jersey, is whether breach of a referral provision of an exclusive right to sell agreement entitles the listing broker to the commission stipulated in the agreement. The pertinent facts found during this nonjury trial are as follows. Plaintiff, Kislak Company, Inc. (Kislak), is a New Jersey corporation engaged in the sale of real estate and is licensed by the state of New Jersey as a broker to engage in this business. Linda Stiles is a licensed real estate salesperson employed by Kislak. Defendant, Seymour Geldzahler, an experienced real estate owner and developer, was approached by Stiles who obtained from Geldzahler an exclusive authorization (agreement I) to sell defendant's property known as Warren Village on October 8, 1982. This authorization provided that for a period of three months Kislak had the exclusive authority to sell the property *259 with a commission of $50,000 to be paid to plaintiff upon the successful completion of the sale of the property. This exclusive agreement contained no express prohibition on the advertisement of the property. Other pertinent provisions of the agreement read:
The undersigned agrees to refer to you all inquiries received regarding the purchase of said property, whether from real estate brokers, prospective purchasers or others.
Your commission shall also be considered earned in the event said property is sold or exchanged or contracted to be sold or exchanged by anyone during the term of the exclusive hereunder.
This exclusive agreement was extended for a period of one month until February 9, 1983 (agreement II). The same agreement was extended again with an expiration date of February 28, 1983 (agreement III).
On February 28, 1983, a new exclusive agreement (agreement IV) was executed which varied the terms of agreements I, II, and III. Specifically, agreement IV made the $50,000 commission payable in two parts: $25,000 at closing and $25,000 payable 12 months after closing. The February 28, 1983 agreement also contained the following language:
Your authorization is tied to our agreement with Howard Burch dated February 15, 1983 only.
Agreement IV was valid for two months, up to and including May 1, 1983, and contained the same requirement of referral by Geldzahler of all inquiries received regarding Warren Village to Kislak.
Within the framework of the four agreements, Kislak undertook activities to market the property. After the execution of agreement I, Stiles obtained an offer of $1,100,000 from Arthur Cirkhus on November 13, 1982 which was presented to Geldzahler. Geldzahler refused this offer as too low. On December 23, 1982, Stiles presented defendant with an offer from Peter Geltman which was rejected; again, the offer was determined by Geldzahler to be too low.
*260 On January 30, 1983, Stiles published an advertisement of the property in the Star Ledger. Although the agreement contained no prohibition on advertising the property, Geldzahler objected to advertisement of the property. His request not to advertise Warren Village was subsequently honored. After the advertisement, Stiles continued to market the property and obtained an offer from Birchland Associates on February 8, 1983. Geldzahler rejected Birchland's first offer of $1,101,000 as too low. On February 15, 1983, Stiles obtained another offer from Birchland of $1,151,000 which defendant conditionally accepted. Geldzahler had his attorney prepare the contracts which were delivered to Birchland. Birchland's attorney requested changes which he inserted in a rider and transmitted to Geldzahler's attorney. On March 24, 1983, a meeting was held to resolve the contract differences between Geldzahler and Birchland. The principal conflict concerned a prohibition of condominium conversion of the Warren Village insisted upon by Geldzahler because he was marketing condominiums on an adjacent property. Birchland refused to agree to such a prohibition, and the proposed deal was terminated.
At some time prior to February 28, 1983, while agreement III was in effect, Geldzahler was contacted by Mr. Gupka of Endoc Realty with whom he had prior contacts. Gupka informed Geldzahler that he had a buyer interested in Warren Village. Geldzahler told Gupka that he had a written exclusive agreement with Kislak which expired on February 28, 1983. Geldzahler further instructed Gupka to wait to present the offer until after February 28, 1983, the date on which the exclusive agreement with Kislak was to end. Geldzahler did not inform Kislak of this inquiry or his contact with Gupka. Gupka did present this offer on March 1, 1983 but Geldzahler did not inform Kislak of this offer.
On March 5, 1983, Stiles produced another offer from W.V. Associates which agreed to the prohibition against condominium conversion. Geldzahler stated to Stiles that he would deal only with Birchland and would not entertain other offers. *261 Agreement IV expired on May 1, 1983. Geldzahler sold Warren Village to Gupka's buyer for $1,200,000 with the closing taking place on September 7, 1983. The purchase price in the Gupka sale was $49,000 higher and the purchase money mortgage taken back was $25,000 less than the terms of the Birchland deal.
Kislak brought suit alleging a breach of the exclusive arrangement between Kislak and Geldzahler and seeking payment of the commission owed it under that agreement.
After considering counsels' arguments, the testimony presented and other evidence adduced, it is clear that until February 28, 1983, Kislak held the exclusive right to sell Geldzahler's property, Warren Village. Agreements I through III conferred upon Kislak an exclusive arrangement from October 8, 1982 to February 28, 1983. Agreement IV did not confer upon Kislak an exclusive right to market the Warren property. Although Geldzahler is an experienced real estate developer who knows the meaning of an exclusive arrangement, he is not an attorney. The limiting language dictated by Geldzahler to Stiles in the drafting of agreement IV, i.e., "Your authorization is tied to our agreement with Howard Burch [of Birchland Associates] dated February 15, 1983 only," was clearly an attempt to limit the scope of Kislak's authority to the Birchland deal alone. As such, the language cannot be reasonably read in light of the facts and circumstances as proposed by Stiles  "He [Geldzahler] wanted the terms of the exclusive not to be less than that Howard Burch deal because he had reduced the price already." Had Geldzahler desired to restrict the authorization to "Birchland-type" deals, since the form provides space for terms of the sale he could have easily done so by referring to the terms stated in the term portion of the agreement. Geldzahler's explanation of the limiting language of agreement IV is more credible than that offered by Kislak. Thus, agreement IV conferred upon Kislak only a power to sell to Birchland Associates which authorization lapsed on May 1, 1983. Geldzahler *262 need not have considered any deals proposed by Kislak after February 28, 1983 other than the Birchland deal.
Undeniably, Geldzahler was bound under agreements I through III. Agreement III granted Kislak the exclusive right to sell the Warren Village property until February 28, 1983. Both Geldzahler and Gupka knew that the exclusive agreement with Kislak was in effect. Agreement III is clear on its face that it was an extension of agreements I and II with no apparent restrictions other than an expiration date and terms found in the prior agreements. Geldzahler was apprised by Gupka prior to February 28, 1983 that he had a potential buyer for Warren Village; Geldzahler's receipt of this inquiry occurred at some point prior to the expiration date of agreement III.
Geldzahler first argues that Kislak's advertisement of the property breached, in some fashion, the exclusive arrangement between him and Kislak. This argument is frivolous. There was no prohibition against advertisement contained in any of the agreements. However, after the advertisement appeared and Geldzahler protested, Kislak did not subsequently advertise the property. The advertising of the property did not constitute a breach of the exclusive agreement.
Geldzahler posits another argument with respect to the provision of this agreement which states:
The undersigned agrees to refer to you all inquiries received regarding the purchase of said property, whether from real estate broker, prospective purchasers or others.
He argues that the contact between him and Gupka did not constitute a "serious inquiry" and as such need not have been referred to plaintiff. The language of the agreement is unambiguous. Gupka, a real estate broker, clearly fell within the class of persons from whom inquiries should be referred. The provision requires "all inquiries" be referred to the listing broker. No distinction is made between "serious" and "nonserious" inquiries. The rationale for referring all inquiries to the *263 listing broker is to permit him or her to investigate these inquiries to determine whether they are, in fact, serious.
Geldzahler further contends even if his communication with Gupka constituted an inquiry, he had no obligation under the terms of the exclusive to notify Kislak of this inquiry. Indeed, Geldzahler made it clear in his testimony that he would not refer inquiries to Kislak. His position, despite the language of the exclusive, was that he would only negotiate with one broker during the period of the agreement. Geldzahler asserts that there was no obligation to place all inquiries at Kislak's doorstep. Rather he contends that notification to the inquirer of his exclusive arrangement was enough to satisfy the terms of the arrangement. That was simply not the case. The agreement called for a referral of the inquiry to the broker, not advising the inquirer of the exclusive.
Geldzahler's argument that he was not required to place inquiries on Kislak's doorstep does not comport with the spirit of such agreements. The purpose of the granting of an exclusive right to sell is twofold. For the principal, the exclusive agreement spurs on the broker to exercise his best efforts in selling the property within a discrete time period; for the broker, the agreement gives him a time period during which he can fully utilize all available resources with the assurance that his efforts will be without interference from other brokers and will be rewarded if the property is sold within the time frame of the exclusive agreement. Geldzahler's interpretation would undermine this longstanding, mutually beneficial method of realty sales.
Moreover, there is an implied covenant of good faith in every contract whereby "neither party shall do anything which will have the effect of destroying or injurying the right of the other party to receive the fruits of a contract." 5 Williston, Contracts, (3 Ed. 1961), § 670 at 159-160; see Association Group Life, Inc. v. Catholic War Veterans of the United States of America, 61 N.J. 150 (1972); Palisades Properties, *264 Inc. v. Brunetti, 44 N.J. 117 (1965). Geldzahler contends that he did act in good faith and did, in fact, refer inquiries to Kislak. His testimony indicates otherwise. Geldzahler stated at trial that he would not refer inquiries to Kislak. He also stated in response to the question "Are you then saying that you told him [Gupka] to wait until that [agreement III] expired before he came around?" that he "Probably did tell him that." It is precisely this type of activity, warming another deal on the back burner in case the deal brewing on the front burner turns cold, that an exclusive agreement was designed to avoid. Geldzahler's actions cannot be termed good faith compliance with agreement III; it is nothing less than subversion of the agreement.
Geldzahler also argues that agreement III must be interpreted in light of the circumstances surrounding the agreement. The agreement is clear on its face; when the agreement is accorded a rational meaning in keeping with its express purpose, no other reading can be given it than as an extension of agreements I and II. See Tessmar v. Grosner, 23 N.J. 193 (1957); Joseph Hilton & Associates, Inc. v. Evans, 201 N.J. Super. 156 (App.Div. 1985). As stated above, it was not until agreement IV that there was a limitation to the Birchland agreement. Geldzahler, by virtue of the language he dictated to Stiles in agreement IV, demonstrated that he desired to limit agreement III to the Birchland deal, he had the wherewithal to do so.
Geldzahler also notes that Kislak's burden of proof in this case is by a preponderance of the evidence. See Ellsworth Dobbs, Inc. v. Johnson, 92 N.J. Super. 271 (App.Div. 1966), rev'd on other grounds 50 N.J. 528 (1967); Bruni v. Posluszny, 56 N.J. Super. 525 (App.Div. 1959). Kislak has satisfied this burden as to Geldzahler's breach of agreement III. The only question that remains is the amount to which Kislak is entitled by virtue of Geldzahler's breach.
*265 Ordinarily, the amount of compensation to which a broker is entitled is ascertained by reference to a contract of employment. Geldzahler contends that the appropriate measure of damages is not the commission, but damages for breach of contract. See Barry Norman Agency, Inc. v. Elias, 117 N.J. Super. 480 (Law Div. 1971). As noted by Geldzahler, however, Guber v. Peters, 149 N.J. Super. 138 (App.Div. 1977) looked unfavorably at Barry Norman. In Guber, the Appellate Division held that where plaintiff was granted an exclusive right to sell defendant's property for six months and a sale occurred during that period, the appropriate measure of damages is the contractually-determined commission. "That represented the proper measure of damages reasonably calculated to compensate the broker in this case for the benefit of his bargain frustrated by the owner's wrongful act." Guber, 149 N.J. Super. at 142. Like one of the defendants in Guber, Geldzahler is a seasoned real estate developer "who was cognizant of the full import of the contract executed with plaintiff." Ibid. Unlike Guber, there was no breach of the contract provision which provided that the broker would receive his commission for any sale during the period of the exclusive. Rather, Geldzahler breached the contract clause which required referral of all inquiries to Kislak, the listing broker. The issue which has not been addressed in New Jersey is whether breach of this clause entitles the broker to the stipulated contract commission which in the present case is $50,000.
Guidance for resolution of this problem is found by reference to other states which have addressed this question. In Gaillard Realty Co. v. Rogers Wire Works, 215 App.Div. 326, 213 N.Y.S. 616 (1926), an owner of property was held liable for the payment of commissions as the measure of damages due to his breach of a contract. That agreement provided: "`all inquiries with respect to said property are to be referred to us [plaintiff]'." Id. at 331, 213 N.Y.S. 616. The court interpreted this language as clearly meaning

*266 that the defendant was to make known to the plaintiff any opportunity which came to the defendant to dispose of the property to a prospective purchaser during the term of the agreement. Otherwise, there would be no force whatever to the provision of the contract that all inquiries with respect to the property were to be referred to the plaintiff. [Ibid.]
The Court of Appeals for the Second Circuit in Hammond v. C.I.T. Financial Corp., 203 F.2d 705 (2 Cir.1953) cited to Gaillard Realty and found that where defendant gave plaintiff an exclusive right to sell defendant's wholly owned subsidiary but defendant sold the subsidiary itself, plaintiff was entitled to the stipulated commission. The owner's breach of the referral provision in the exclusive right to sell and the subsequent sale by the owner entitled the broker to his commission.
The Court of Appeals of Louisiana held in Doll v. Thornhill, 6 So.2d 793 (La. App. 1942) that a contract creating an exclusive right to sell containing a provision that required the owner during the life of the contract to refer all prospective purchasers to the agent, precluded the owner from trading directly or indirectly with prospective purchasers. Breach of this provision rendered the owner liable for payment of the commission stated in the contract. Geldzahler cites Latter & Blum, Inc. v. Grand Lodge of Louisiana, 357 So.2d 1194 (La. App. 1978), apparently, for the proposition that a principal's failure to refer inquiries, if no bad faith is present, does not render the principal liable for damages. Latter & Blum, Inc. cannot be so read. The Latter court as an appellate tribunal was primarily reviewing the trial court's action. As the Latter court stated,
[The trial court's] judgment may not simply be supplanted by our opinion as to the weight and sufficiency of the evidence ... This type of situation is the classic application of the rule that we should leave that judgment undisturbed absent manifest error. [Id. at 1195]
Second, the Latter case is factually distinguishable from the present case. In Latter, the contact which was the subject of the alleged breach of the referral agreement occurred after the termination of the exclusive agreement. Here, the contact occurred during the period of the exclusive agreement.
*267 Doll, Hammond and Gaillard Realty are persuasive. In addition, the presence of a referral term has been recognized as an essential component of an exclusive agreement so much so that it has been found, of itself, to confer upon a broker the exclusive right to sell. See Doll, supra; Donlon v. Babin, 44 So.2d 134 (La. App. 1950). There is no reason to distinguish, in determining the applicable measure of damages, between breach of a referral provision or breach of a term providing that a commission will be deemed earned if the property is sold or exchanged during the period of the exclusive agreement. The appropriate measure of damages for breach of a term requiring referral of all inquiries to the listing broker, which is part and parcel of the exclusive agreement is the stipulated commission in that agreement.
Kislak makes mention of prejudgment interest in its post-trial brief although a request for such interest was not incorporated in the relevant counts on which this decision is based. This defect in drafting is not, however, the basis for denial of prejudgment interest.
Kislak correctly notes that prejudgment interest is not punitive in nature. See Meier v. New Jersey Life Insurance Company, 195 N.J. Super. 478 (App.Div. 1984). Such interest may be awarded based upon equitable principles. See R. 4:42-11(b); Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123 (1976); Manning Engineering, Inc. v. Hudson County Park Comm., 71 N.J. 145 (1976). In both Bak-A-Lum and Manning, prejudgment interest was not imposed. The courts found that the equities did not warrant the imposition of such interest. One of the factors cited in Manning was "the debatability of the points raised by the defendant." Manning, 71 N.J. at 159. The issues raised by Geldzahler in the present case were debatable and, in fact, had not been previously addressed by the courts of New Jersey.
As Kislak correctly noted, the trial court is vested with broad discretion to allow prejudgment interest in accordance *268 with the principles of equity. See Tobin v. Jersey Shore Bank, 189 N.J. Super. 411 (App.Div. 1983). Here, in addition to the novelty of the issues addressed, Kislak has been awarded a substantial amount of money. Geldzahler has already paid one commission and now is required to pay another. Two commissions on the single transaction, without the payment of interest, is a heavy enough price to pay and should be a sufficient deterrent to others who would engage in conduct that thwarts the good faith dealings embraced within an exclusive real estate listing agreement.
After full examination of all equitable considerations, the court finds that an award of prejudgment interest is not merited. Judgment for Kislak is rendered in the amount of $50,000. An order of judgment consistent with this opinion shall be submitted by Kislak's counsel under the five day rule.