THE KISLAK COMPANY, INC., PLAINTIFF–RESPONDENT, v. ABRAHAM HIRSCHFELD, INDIVIDUALLY AND T/A WEST PARK WASHINGTON CORP., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1988—Decided February 16, 1988.

Before Judges DREIER and ASHBEY.

*Irwin I. Kimmelman* argued the cause for appellant (*Kimmelman, Wolff & Samson,* attorneys; *Ronald E. Wiss and Andrew J. Miller,* on the brief).

*Frederick M. Testa* argued the cause for respondent (*Frederick M. Testa,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant, Abraham Hirschfeld, individually and trading as West Park Washington Corp., appeals from a judgment of $200,000, plus approximately $63,000 in prejudgment interest, awarded to plaintiff The Kislak Company, Inc., a real estate broker. The judgment was based upon a commission which the trial judge found to be due and payable to plaintiff as a result of the sale by defendant through another broker of an apartment complex in Union City during a time that the real estate was subject to an exclusive listing with plaintiff. The selling broker was not a party to these proceedings. At trial, defend-

ant's sole defense was that plaintiff was not entitled to a commission because it failed to use its best efforts to sell the subject property. After a five-day bench trial the trial judge determined that defendant, not plaintiff, had breached the exclusive listing agreement.

Defendant signed a series of exclusive listing agreements with plaintiff. The first covered the period of March 9, 1982 through May 31, 1982 and provided for a $200,000 commission to be paid upon sale of the property. The agreement specifically provided that defendant would refer to plaintiff all inquiries received regarding the purchase of the property whether from real estate brokers, prospective purchasers or others, and that the commission was considered earned if the property was sold or exchanged or contracted to be sold or exchanged by anyone during the term of the agreement. A few days after the signing of this initial agreement defendant received a letter from the eventual selling broker informing defendant of the details of an offer to buy the property. The trial judge determined that defendant never informed plaintiff of this inquiry.

On May 5, 1982, prior to the expiration of the initial agreement, plaintiff and defendant executed a second agreement containing substantially identical terms, except that the period of exclusive authorization was extended to June 15, 1982. On June 9, 1982 the parties executed a third exclusive agreement upon similar terms, except that the payment terms for the $200,000 commission were amended to provide that the commission was to be paid $100,000 at the closing of title, $50,000 six months later and $50,000 18 months after closing, to coordinate with the deferred payments permitted for a potential purchaser under the listing agreement. This third agreement did not extend the termination date of the second exclusive listing, June 15, 1982, but merely amended its terms.

Four months after the expiration of the exclusive listing agreement, defendant sold the property to the purchaser originally presented in March 1982. Defendant and the purchaser had been involved in extensive negotiations that had com-

menced during the listing agreement. Plaintiff did not discover this until after the closing, and this suit ensued for plaintiff's commission. Although the sale was reflected by the closing statement dated October 20, 1983, the sales contract between Washington Park Urban Renewal Corp. and the purchaser is dated June 23, 1982 which is handwritten over the scratched out, typed date "29th day of April 1982." A cover letter of April 29, 1982 from the purchaser's attorney enclosing the deposit checks was also admitted into evidence. Defendant paid a full $200,000 commission to the selling broker.

The sole issues presented for adjudication here [1] are whether plaintiff's commission should be reduced by any referral commission it would have been required to pay had defendant made a proper reference of the inquiry to plaintiff, and the amount of prejudgment interest to be assessed.

I

■ Defendant first contends that the trial judge should have entered a damage judgment for no more than the net loss that would have been suffered by plaintiff, *i.e.,* the $200,000 commission, less the referral or selling broker's commission which would have been paid by plaintiff had defendant referred the inquiry as required by the listing agreement. Inexplicably, defendant's trial attorney, who is not counsel on this appeal, stated at oral argument following the conclusion of the trial that if the judge found bad faith on particular facts, the proper measure of damages would be the full $200,000. But the testimony of both sides and the understanding of the court was that if the offer had been referred there would have been a

---

[1] At oral argument defendant abandoned the additional issue of whether plaintiff was precluded from obtaining its commission because it had violated a fiduciary duty to defendant by not disclosing that there was a common principal of different corporations which had presented offers during the listing period. Defendant also did not appeal from any other determination of the trial judge supporting plaintiff's cause of action or defendant's lack of a substantive defense thereto.

split commission.[2] This point, however, was not specifically argued before the trial judge, and plaintiff contends that defendant's reference to the full $200,000 commission being due constituted a stipulation. We disagree. When read in context, the comment was merely a reference to a hypothetical situation and did not in any way treat the issue of offset for an amount that would have been paid to a selling broker.

While it is true that the issue was not specifically raised, it still may be considered by this court under *R.* 2:10–2 to avoid an "unjust result." Had this been a jury trial the judge would have been obligated to charge the jury concerning the proper method of computing mitigated damages, whether or not a specific charge was requested. When facts mandating mitigation were as evident as they were here, the judge was under no less of an obligation to apply the same standards himself, regardless of whether the specific issue of mitigation was raised by defendant. We therefore must examine this issue and determine whether the judge should have inquired further concerning any offset to the $200,000 commission.

A similar issue was presented in *Kislak Co., Inc. v. Geldzahler,* 210 *N.J.Super.* 255 (Law Div.1985). Although no mitigation issue was raised or argued concerning an offset for a selling broker's commission, the court stated:

> The appropriate measure of damages for breach of a term requiring referral of all inquiries to the listing broker, which is part and parcel of the exclusive agreement is the stipulated commission in that agreement. [210 *N.J.Super.* at 267].

We take no issue with this statement, since the court noted in *Kislak* that there was apparently no testimony from the parties

---

[2]One of plaintiff's real estate salesmen testified that he had no "objection to co-brokering a deal with" the selling broker. Defendant testified that he had in fact advised plaintiff of the offer and told them that if the deal was consummated he "would be glad to arrange or talk to my broker about sharing commission or doing something and their answer was a half a loaf is better than nothing." The court stated that "[l]ogic is rather compelling that if they were told of a prospective buyer with a $200,000 commission, albeit a split in the wood," there would have been an accommodation.

nor understanding by the court that there would be a shared commission had the transaction been referred nor was the issue raised there as it has been before us. The court in *Kislak* properly relied upon *Guber v. Peters*, 149 *N.J.Super.* 138 (App. Div.1977). That case involved a sale by defendants where there would have been no co-brokerage, and therefore the plaintiff was entitled to his commission.

 There are two basic situations where a seller interposes another broker. The first is where an interloping broker takes away a customer which the listing broker would have serviced, as in the case where a purchaser· directly approaches the seller, but is referred to a different broker. In such a case the listing broker would be deprived of the opportunity of being both the listing and selling broker and of receiving the full commission. The full commission is the only proper measure of damages in such a situation. A different situation exists, however, when a broker representing a prospective purchaser approaches the seller. In that case, as in the one before us, the original broker has been deprived only of the listing broker's commission. In the language of *Guber v. Peters*, the broker should be compensated only "for the benefit of his bargain frustrated by the owners' wrongful act." 149 *N.J.Super.* at 142.

Such a measure of damages comports with the usual standards found throughout our case law. *See Lewis Schlesinger Co. v. Rice*, 4 *N.J.* 169, 179 (1950):

> Generally, the recoverable damage for a breach of contract is the loss directly and naturally ensuing from the breach in the ordinary course of events. It comprises such losses as would probably result in the ordinary course of things from a breach of the contract under the special circumstances known to the parties at the time it was made.

*Cf. 525 Main Street Corp. v. Eagle Roofing Co.*, 34 *N.J.* 251, 254 (1961) (where the court stated· that "[c]ompensatory damages are designed 'to put the injured party in as good a position as he would have had if performance had been rendered as promised,'" (quoting from 5 *Corbin, Contracts*, (1951), § 992 at 5)). *And see Restatement, Contracts* 2d, § 344(a) at 102

(1981). *The Restatement of Agency* 2d, § 449, Comment d (1958), discusses this point in commenting on the resultant liability where a principal in violation of a contractual prohibition, competes with an agent.

> The contract may, however, be interpreted as including only a promise that the principal will not employ another agent or will not accomplish the result himself, in which case the agent is entitled only to damages for the breach of promise by the principal. In this case, the agent is entitled to the amount promised for performance, diminished by any expense he would have had in accomplishing the result, and he is entitled to this only if he can show that there is a probability that he would have accomplished the result. [*Id.* at 363].

As there is no question here that the result would have been accomplished, plaintiff's commission should have been diminished by the amount of the commission it would have shared with the selling broker.[3]

## II

The next issue raised by defendant is that the trial judge ordered prejudgment interest on the entire commission from the date of judgment. As noted earlier, plaintiff and defendant agreed in their third listing agreement that the real estate commission was payable in three installments commensurate with a prospective purchaser's payment schedule envisioned in the listing agreement. Had these terms been the actual selling terms, prejudgment interest would properly be payable from the dates each of the commission payments would have been due, so that plaintiff would have been compensated only for its actual out-of-pocket loss of the use of the money.

We have, however, examined the actual sales contract which provided for a different payment schedule and a higher overall purchase price. The net cash available to defendant at closing and thereafter was $700,000 at closing and $700,000 12 months

---

[3]It is unclear from the testimony at the trial what the exact percentage split would have been between the two brokers. We understand that there is an appropriate protocol to which reference can be made for the percentages for that time and location. On remand the trial judge should inquire of the parties what this percentage was or, if necessary, hold a short plenary hearing to determine the proper apportionment.

later, with an extended purchase-money second mortgage. The net cash was therefore far less than that contemplated by the listing agreement ($2,150,000 at closing; $300,000 six months later and $300,000 18 months after closing). Although it is difficult to appraise the discounted value of the $2,600,000 10–year interest-only mortgage, which further provided for accrual of a portion of the interest until final payment, it appears that the terms of the actual contract were no more beneficial to defendant than the listing terms, especially insofar as up-front money was concerned. The payment of interest on the commission, therefore, should have followed no more onerous a schedule than that incorporated in the initial listing agreement. We therefore direct that once the trial judge has determined the net amount of the commission that would have been payable to plaintiff, prejudgment interest should be assessed on 50% of that amount from the date of closing; 75% from six months thereafter and 100% from 18 months after the date of closing.

This matter is remanded to the Law Division for the entry of a modified judgment in accordance with this opinion.