[Civ. No. 2528.   Third Appellate ·District.—November 17, 1922.]

GAIL HOBSON et al., Appellants, v. A. D. HUNT et al., Respondents.

[1] BROKER'S COMMISSIONS—AGENCY CONTRACT—SALE BY OWNER AFTER TERMINATION—LIABILITY FOR COMMISSION—INTENTION—CONSTRUCTION.—A provision in an agency contract for the sale of real estate that in the event of the property being sold or exchanged by the owner, after the termination of the agent's right to sell, "to or by any party introduced or whose name in writing has been given the owner, as a prospective purchaser, by the agent, the owner agrees to pay the agent" a specified commission, must be construed as having been intended to protect the agent in the event of a sale made after the termination of the contract to a person whom he had interested in the land during the life of the contract to the extent that such person had become a prospective purchaser, and not as entitling the agent to the agreed commission upon the sale of the land, after the termination of the agency contract, to a person whose name had been given by the agent to the owner as a prospective purchaser, who was not a prospective purchaser of the property at any time during the life of the agency agreement.

APPEAL from a judgment of the Superior Court of Yuba County.   Eugene P. McDaniel, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Butler & Van Dyke for Appellants.

W. P. Rich and W. H. Carlin for Respondents.

FINCH, P. J.—August 6, 1919, the defendants gave D. W. Hobson Company the exclusive right, for two months, and thereafter until ten days' notice in writing of the cancellation thereof, to sell their stock ranch at Browns Valley, together with certain personal property, at the price of $40 an acre, $10,000 of the purchase price to be paid on delivery of deed.  [1]  The agreement contained the following: "If the above described property be sold or exchanged during the life of this agreement, or if the agent during the life of this agreement, shall find a purchaser ready, willing and able to buy the said property at the above price, the owner agrees to pay the agent as a commission, five dollars per acre of said price, and in event of the said property being sold or exchanged by the owner, after the termination of this right to sell, to or by any party introduced or whose name in writing has been given the owner, as a prospective purchaser, by the agent, the owner agrees to pay the agent, as a commission, the above mentioned rate of commission on whatever price is accepted for the said property."

J. H. Ware called at the office of the company, the date of the call not appearing from the evidence, and he was shown a ranch near Folsom, but was not interested in it. Ware testified that nothing was said to him about the Hunt ranch on that occasion. Thereafter, on Saturday, the twenty-seventh day of September, as indicated by the letter of October 1st, hereinafter referred to, one of the company's salesmen called on Ware and informed him that the company had a ranch of 710 acres at Browns Valley for sale, on which a cash payment of $15,000 would be required. October 1st, the salesman wrote Ware, stating that it was possible that the owner of the Brown Valley ranch, mentioned in the conversation with Ware on Saturday, would accept $10,000 or $11,000 as a first payment, but Ware made no reply to the letter. September 23d, the company wrote the defendants, stating the efforts being made to effect a sale and giving the names of eleven prospective pur-

chasers, including that of Ware. The evidence does not show that Ware's attention had been called to the defendants' ranch prior to September 27th, when the salesman called on him. About October 20th, the defendants gave written notice of cancellation of the authorization to sell. November 26th Ware came to an agreement directly with defendants to purchase the ranch for $24,000, of which sum $2,000 was to be paid in cash, and the land was conveyed to him January 2, 1920. The evidence does not show when or by what means Ware was brought in touch with the defendants. Ware testified that at the interview of September 27th, the salesman said he would like to take Ware "to see a ranch in Browns Valley, he didn't tell me it was the Hunt ranch, but mentioned a ranch up there that he said was forty or forty-five thousand dollars, $15,000 cash to handle it. I told him: 'It doesn't interest me, no use taking up my time or your time to go look. I haven't the $15,000. I wouldn't be interested.' . . . That is as far as his efforts were concerned. It was dropped. . . . It didn't interest me at the figure or at the cash that was required to handle it. . . . I don't remember the letter at all, but had I received it, it wouldn't have interested me because I didn't have that amount of money." Ware further testified that the name Hunt Brothers or the Hunts was never mentioned in connection with the place. D. W. Hobson died prior to the time of the trial. It may be that the plaintiffs experienced difficulty in proving their case by reason of Hobson's death and the trial court doubtless gave that fact due consideration in weighing the evidence. There being a substantial conflict, the findings of the court are conclusive.

The court found that Ware was not a prospective purchaser of defendants' property at any time prior to the termination of the contract and that "D. W. Hobson Company did no act, nor performed any services which in any way brought about, induced, influenced or caused said purchase or sale of said property." These findings are fully supported by the evidence. Ware emphatically declined to consider the purchase when the company endeavored to interest him in the land and when he finally agreed to purchase it he seems not to have been aware that it was the same ranch mentioned by the company's salesman. There is no evidence of bad faith on the part of Ware or the

defendants. October 10th, the defendants wrote the company, stating that the contract had expired, complaining of the delay in effecting a sale, and requesting an immediate reply. Receiving no reply, the defendants canceled the contract about October 20th.

Neither party has presented any authority directly in point. Respondents rely on the case of *Wright & Kimbrough* v. *Dewees,* 52 Cal. App. 42 [197 Pac. 957]. Whether or not that case is controlling here, it cannot be said that Ware was a prospective purchaser of defendants' land at any time during the life of the contract. There is no evidence that his attention had ever been called to the defendants' land prior to the listing of his name as a prospective purchaser by the letter of September 23d. One cannot be made a prospective purchaser by merely calling him such. In the language of counsel for respondents, "it would scarcely be argued that an agent, obtaining a contract such as that shown in the record in this case, could write to the owner, giving him a list taken from the great register of a county or from a compilation of prominent persons in a community, and then if perchance, months after the contract had expired, the owner should sell to one of those persons, he could be required to pay commissions to such an agent." The contract must be given a reasonable interpretation. The clause in question was doubtless intended to protect the agent in the event of a sale made after the termination of the contract, to a person whom the agent had interested in the land during the life of the contract to the extent that such person had become a prospective purchaser, that is, one to whom there was at least some probability of making a sale within a reasonable time. To construe the contract otherwise would be to hold that the agent in such a case might give the owner any number of names of persons as prospective purchasers, regardless of whether or not they were such in fact, and then, in the event of a sale to any one of them, claim the commission. It would be highly unreasonable to hold that such was the intention of the parties to the contract. It would tend to make a real estate dealer a procurer of names, rather than a procurer of purchasers.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.