### CALKA v. DONAHOE

1. BROKERS — CONTRACTS — REAL ESTATE — COMMISSIONS — GENERAL RULE.

> Ordinarily, a real estate broker, who has an express written contract with a property owner, must produce a purchaser ready, willing, and able to purchase that owner's property on the contract terms before he can recover a commission.

2. BROKERS—CONTRACTS—REAL ESTATE—EXCLUSIVE SALE RIGHTS—UNASSISTED SALE—ASSURED COMMISSION.

> A real estate broker can recover his commission, notwithstanding a failure to produce a willing purchaser, when the listing agreement grants exclusive sale rights to him for a definite period and contains specific language assuring him a commission even if the property owner makes an unassisted sale.

3. BROKERS—CONTRACTS—REAL ESTATE—COMMISSION AGREEMENT—UNASSISTED SALE.

> A real estate broker and a property owner may, if they see fit, agree that the broker is to be paid a commission should the owner sell his own property without the broker's cooperation.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers §§ 182–184, 189.
[2–5] 12 Am Jur 2d, Brokers §§ 226–229.
[6] 12 Am Jur 2d, Brokers § 33.
[7, 9] 12 Am Jur 2d, Brokers §§ 33, 182–184, **226.**
[8] 12 Am Jur 2d, Brokers § 226.
[10] 12 Am Jur 2d, Brokers §§ 182–184, 226.
[11] 12 Am Jur 2d, Brokers §§ 161, 162.
[12] 12 Am Jur 2d, Brokers § 226.
[13, 16] 12 Am Jur 2d, Brokers §§ 226–229.
[14] 17 Am Jur 2d, Contracts §§ 240, 259, 267.
[15] 12 Am Jur 2d, Brokers § 226.
[17, 19, 20] 12 Am Jur 2d, Brokers §§ 226–229.
[18] 5 Am Jur 2d, Appeal and Error § 545.
    12 Am Jur 2d, Brokers § 161.
[21] 12 Am Jur 2d, Brokers § 226.
[22] 6 Am Jur 2d, Attachment and Garnishment § 596 *et seq.*

4. BROKERS — CONTRACTS — REAL ESTATE — COMMISSIONS — AS-
SURED, CONTINGENT — DISTINCTION.

A real estate listing agreement specifically assuring a commission
to the broker even if the property owner makes an unassisted
sale should not be confused with ordinary brokerage contracts
where a broker's compensation is contingent upon finding a
willing purchaser.

5. BROKERS—CONTRACTS—REAL ESTATE—COMMISSIONS—UNASSISTED
SALES—CONSIDERATION.

A real estate broker's expenditure of time and effort in attempt-
ing to find a purchaser for an owner's property, irrespective
of results, provides the necessary consideration to support a
contract assuring a commission to the broker even if the owner
makes an unassisted sale.

6. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS—
PROSPECTS—DEFINITION—INTERCHANGEABLE TERMS.

A "prospect" is a "potential buyer or customer" and when the
terms "prospect" and "prospective purchaser" are used inter-
changeably in a real estate listing agreement the term "pro-
spective purchaser" is not ambiguous.

7. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS—
REFERRALS.

"Prospective purchasers", as used in a real estate broker's
listing agreement, are not restricted to those persons willing
to pay a listing agreement price where such a construction
would undermine the function of a clause in the same agree-
ment requiring a property owner to refer to his real estate
broker any prospective purchasers of whom the owner had
knowledge during the listing period.

8. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS—
REFERRALS—PURPOSE.

Requiring a property owner to refer to his real estate broker any
prospective purchasers of whom the owner has knowledge
during the listing period is to give the broker an opportunity
to effectuate a sale to those who otherwise would not pay the
listed price, by convincing them of the merits of the property.

9. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS—
DEFINITION.

A "prospective purchaser" as used in a listing agreement
refers to anyone who shows an interest in property
listed with a real estate broker notwithstanding an
expressed unwillingness on the interested person's part to pay
the listed price.

10. Brokers—Contracts—Real Estate—Maximum Commission—Prospective Purchaser Referrals.

A listing agreement which specifies a real estate broker's maximum commission and requires a property owner to refer to that broker any prospective purchasers of whom the owner has knowledge during the listing term, does not restrict prospective purchasers only to those willing to pay the listed price.

11. Brokers—Contracts—Real Estate—Maximum Commission—Lower Price Contemplated.

A real estate listing agreement which specifies a broker's maximum commission indicates that the parties contemplated a possible sale at a price less than the full contract amount.

12. Brokers—Contracts—Real Estate—Commission—Any Sale.

A listing agreement which contemplates payment of a commission to a real estate broker on any sale to prospects on a list given by the broker to the property owners, necessarily includes those prospects unwilling to purchase the property at the listed price.

13. Brokers—Contracts—Real Estate—Prospective Purchasers—Nonrestrictive to Contract Price.

A real estate listing agreement requiring a property owner to refer to his real estate broker any prospective purchasers of whom the owner has knowledge during the listing term, does not restrict prospective purchasers to those willing to pay the listed price as this would enable an owner to avoid payment of the broker's commission otherwise due under the listing contract.

14. Contracts—Construction—Neutralization of Provisions.

A construction of a particular contract term will not be adopted where it entirely neutralizes an additional contract provision.

15. Brokers—Contracts—Real Estate—Prospective Purchasers—Construction.

Prospective purchasers, as that term was used in a listing agreement requiring a property owner to refer all prospective purchasers to his real estate broker during the listing term, would not be restricted to those willing to pay the listed price where such a restriction entirely neutralized an additional clause specifying the broker's maximum commission which indicated that the parties contemplated a possible sale of the owner's property at a price less than the full listing amount.

16. BROKERS—CONTRACTS—REAL ESTATE—BUYER AFTER LISTING EXPIRATION—PROSPECTIVE PURCHASER—COMMISSIONS.

A person who bought the defendants' farm a day after their listing agreement with plaintiff real estate broker had expired was a prospective purchaser within the listing agreement provision requiring the defendants to refer to the plaintiff all prospective purchasers of whom they had knowledge during the listing period and it was immaterial that the purchaser had expressed, during the listing agreement term, an unwillingness to pay the full contract price.

17. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS —REFERRALS—FAILURE TO MAKE.

A property owner who violates his listing contract with a real estate broker by not referring to that broker all prospective purchasers as soon as they evidence any interest in his property is precluded from saying that he failed to make such a referral because no sale would have resulted, as a real estate broker supposedly is an expert in his business, and the courts must presume that the broker could have accomplished what the property owner did in effecting a sale to a prospective purchaser, for to hold otherwise would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon real estate brokers who conscientiously try to carry out their duties.

18. APPEAL AND ERROR—CONTRACTS—REAL ESTATE—COMMISSIONS— No QUESTION—AFFIRMANCE.

A judgment for a real estate broker's commission will be affirmed where the amount is not questioned on appeal.

19. BROKERS—CONTRACTS—REAL ESTATE—OWNER'S SALE—EXPIRATION OF LISTING—PAYMENT OF COMMISSION—PURPOSE.

Protection of a real estate broker's commission from a property owner's subterfuge and fraud is the purpose of a listing agreement provision requiring a property owner to pay a commission to the real estate broker if the owner sells during the listing term, or within a specified period after the expiration of the listing agreement, to any person with whom the broker negotiated regarding a sale during the listing term.

20. BROKERS—CONTRACTS—REAL ESTATE—PROSPECTIVE PURCHASERS —OWNER'S REFERRAL—PURPOSE.

A listing agreement provision requiring property owners to refer to their real estate broker prospective purchasers is designed to protect brokers from an owner's fraud and subterfuge.

21. Brokers — Contracts — Real Estate — Commissions — Prospective Purchasers — Nonreferral — Subterfuge.

Defendants' failure to refer the eventual buyer of their farm to plaintiff real estate broker as a prospective purchaser, as required by their listing agreement, was in bad faith and for the purpose of avoiding payment of plaintiff's commission.

22. Attachment—Wrongful—Damages.

Defendant farm sellers were entitled to damages for plaintiff real estate broker's wrongful attachment of their property where plaintiff, suing for his commission, asserted in his affidavit for a writ of attachment that he had good reason to believe that defendants were about to remove their property from the state with intent to defraud their creditors but the facts merely justified a conclusion that defendants disagreed with plaintiff concerning their obligation to pay him a commission and that they were leaving Michigan for causes wholly unrelated to the existence of plaintiff's disputed commission claim.

Appeal from Tuscola, James P. Churchill, J. Submitted Division 2 November 5, 1969, at Lansing. (Docket No. 4,672.) Decided November 25, 1969.

Complaint by B. A. Calka against R. Paul Donahoe and Hazel A. Donahoe, husband and wife, to recover a real estate commission from the sale of defendants' farm. Defendants counterclaimed for damages for wrongful attachment of their property. Judgment for plaintiff in the amount of his broker's commission; judgment for defendants on their counterclaim for damages for wrongful attachment. Defendants appeal. Affirmed.

*Clinton C. House,* for plaintiff.

*James J. Epskamp,* for defendants.

Before: J. H. Gillis, P. J., McGregor and V. J. Brennan, JJ.

J. H. GILLIS, J.   This is a suit by a real estate broker for a commission for the sale of a farm, claimed to be due under the terms of a written real estate listing agreement.   The farm was sold after the agreement had expired but within 12 months thereafter.   The circuit judge who heard the testimony without a jury entered a judgment for plaintiff broker, and defendants appeal.

Defendants owned a farm which they wished to sell.   On August 19, 1964, defendants enter into an exclusive listing agreement with plaintiff real estate broker, B. A. Calka.   Under the agreement, plaintiff had the exclusive right to sell the farm in the period August 19, 1964 to September 20, 1964.   The property was listed at a sale price of $130,000.

The relevant portions of the contract follow:

"(1) In consideration of your undertaking to find a purchaser through the efforts of your office and salesmen, the undersigned does hereby agree that this contract shall remain in effect until 9–20–64 the exclusive right to sell, lease, trade or option property herein described as listing No. 1348 on price and terms acceptable to us.   You are authorized to accept a deposit to bind bargain and hold same in escrow pending consummation of deal, and you are given the power herewith to hold all papers of interest until taxes, interest, mortgages and commissions have been fully satisfied and discharged.

"(2) Undersigned offers and agrees to cooperate in effecting sale and *to refer any prospective purchaser of whom he has knowledge during the term of this listing to you* and in the event of a deal by undersigned during the term of this listing or within 12 months thereafter to any person with whom said Broker negotiated with respect to a deal during the term thereof.   Undersigned shall be considered as your agent in effecting such deal."   (Emphasis supplied.)

The contract also contained the following handwritten addendum:

"Maximum commission is $5,000.

"At the end of the 30 day listing period B. A. Calka will furnish sellers with a list of prospects (in writing).

"Due to only 30 day listing—paragraph 2 will read 12 months instead of 6 months; on any prospects that B. A. Calka, Realtor or his salesmen have negotiated with during Aug. 19 to Sept. 20, 1964."

After the execution of the contract, plaintiff advertised the sale in newspapers and expended time and effort in an attempt to find a purchaser for the farm. Plaintiff's efforts, however, failed to produce a buyer. The contract expired by its own terms on September 20, 1964.

During the term of the exclusive listing agreement, defendant R. Paul Donahoe was approached by one Carl Vollmar. Vollmar inquired of defendant Donahoe, "Is that your farm listed," and was informed that the farm was for sale and the sale price was $130,000. Vollmar stated in response: "I wouldn't give $130,000 for no farm."

Donahoe was also approached by Albert Vollmar, father of Carl Vollmar, during the term of the agreement. Donahoe was told by Albert Vollmar, "If Calka don't sell your farm, let us know." The evidence tended to show that on either of the above occasions, or at some other time during the term, Donahoe informed the Vollmars that the listing expired on September 20, 1964. The record further discloses that defendant Donahoe never informed plaintiff of his contacts with the Vollmars.

On September 21, 1964, defendants reached an agreement for the sale of the farm with Carl Vollmar at a purchase price of $110,000. The sale was con-

summated by execution of a land contract between defendants and Vollmar on September 22, 1964.

Ordinarily, in order for a real estate broker to recover a commission where he has an express written contract, he must produce a purchaser ready, willing, and able to purchase the property on the terms of the contract. See *McDonald* v. *Boeing* (1880), 43 Mich 394; *Gilmore* v. *Bolio* (1911), 165 Mich 633; *Crawford* v. *Cicotte* (1915), 186 Mich 269; *Pittelkow* v. *Jefferson Park Land Co., Ltd.* (1938), 283 Mich 374. In certain situations, however, a broker can recover his commission, notwithstanding a failure to produce a willing purchaser.

"[W]here the language of the agreement granted what we construe to be exclusive sale rights for a specified period and *there was specific language which purported to assure a commission to the broker even if the owner made an unassisted sale, the broker was allowed to recover after the owner sold. Axe* v. *Tolbert,* 179 Mich 556; *DeBoer* v. *Geib,* 255 Mich 542." *Ladd* v. *Teichman* (1960), 359 Mich 587, 593. (Emphasis supplied.)

See also, *Seelye* v. *Broad* (1967), 379 Mich 289.

Thus, the broker and owner may, if they see fit, agree that the broker is to be paid a commission on a sale by the owner without the broker's cooperation. Such contracts are not to be confused with ordinary contracts of brokerage where compensation is contingent on the broker finding a willing purchaser. *Axe* v. *Tolbert, supra,* at 564. The time and effort expended by the broker in attempting to find a purchaser provides "the necessary consideration * * * to support the contract, irrespective of results." *Ladd* v. *Teichman, supra,* at 595, quoting *Bell* v. *Dimmerling* (1948), 149 Ohio St 165, 171, 172 (78 NE2d 49, 52).

In the present case, the agreement is not an ordinary brokerage contract. As we read the contract, Calka is entitled to receive a commission "in the event of a deal by [defendants] during the term of this listing or within 12 months thereafter on any prospects that B. A. Calka, Realtor or his salesmen have negotiated with during Aug. 19 to Sept. 20, 1964." Had plaintiff negotiated with Carl Vollmar during the term of the agreement, it is clear that he would be entitled to his commission.

Much of the record in this case consists of testimony concerning the contacts between defendant R. Paul Donahoe and the Vollmars. Plaintiff contends that by the terms of the agreement Donahoe was required to refer the Vollmars to him. Defendants contend, however, that neither Carl nor Albert Vollmar was a prospective purchaser within the meaning of the contract. It is defendants' position that the term "prospective purchaser" refers only to those willing to purchase at the contract price. Since Carl Vollmar was unwilling to pay $130,000 for the farm, defendants contend that they were not obligated to refer the Vollmars to plaintiff. Furthermore, defendants suggest that the term is at best ambiguous, and we are urged to resolve the ambiguity against plaintiff.

We cannot agree with defendants' contention that the term "prospective purchaser" is ambiguous. It appears from the contract that the terms "prospective purchaser" and "prospect" are used interchangeably. Webster's New International Dictionary (3d ed), p 1821, defines "prospect" as a "potential buyer or customer." Quite obviously, although Carl Vollmar was unwilling to pay $130,000 for the farm, he was nevertheless a potential buyer. Moreover, to restrict prospective purchasers to those willing to pay the contract price would undermine the function

of the clause requiring referrals by the owner. The very purpose of the clause is to give the broker an opportunity to effectuate a sale to those who otherwise "* * * wouldn't give $130,000 for no farm" by convincing them of the merits of the property. *Cf. Davis-Fisher Co.* v. *Hall* (1914), 182 Mich 574, 580.

In the context of this agreement, we conclude that the term "prospective purchaser" refers to anyone who shows an interest in the property, notwithstanding an expressed unwillingness to pay the contract price. *Cf. Davis-Fisher Co.* v. *Hall, supra,* at 580, 581. Two additional reasons compel this conclusion. First, the contract provides: "Maximum commission is $5,000." In light of this provision, we cannot restrict prospective purchasers to include only those willing to pay the contract price. Such a provision indicates that the parties contemplated a possible sale at a price less than the full contract price. Furthermore, the contract contemplates payment of a commission on any sale to prospects included on the list furnished to defendants by Calka. Such prospects necessarily include those unwilling to purchase the farm at $130,000. To restrict "prospective purchaser" to those willing to pay the contract price would thus enable the owner to avoid payment of a commission otherwise due under the contract. We cannot adopt a construction of "prospective purchasers" which entirely neutralizes an additional provision of the contract. See *DeBoer* v. *Geib, supra,* at 544.

We hold that Carl Vollmar was a prospective purchaser within the meaning of the contract.

In entering judgment for the plaintiff, the trial court held that:

"Carl Vollmar was a prospective purchaser during the term of the listing and  *  *  * R. Paul Donahoe, one of [the] defendants, knew it.

"Defendants breached their contract by failing to inform plaintiff of this fact during the term and therefore wrongfully prevented him from negotiating with [the] Vollmars during the term of the listing and wrongfully prevented him from including the Vollmars' names in the list of prospects which was timely furnished."

We agree.

In *Doll* v. *Thornhill* (La App, 1942), 6 So 2d 793, a broker commenced suit for a commission, relying in part on the failure of the owner to refer one Bankston to him during the term of an exclusive agency. In affirming a judgment for the broker, the court construed a provision in the brokerage contract requiring the owner "to refer all applicants" to Doll, the broker. The court noted (6 So 2d at 795):

"But above and beyond all of these facts we find that Thornhill clearly violated the plain provisions of his contract in not referring Bankston to Doll as soon as the former evidenced any interest in the property. *It will not do for him to say that had he done so, no sale would have resulted.* A real estate agent is supposedly an expert in his business, and we must presume that he could have accomplished what Thornhill accomplished  *  *  *. At any rate, he was entitled  *  *  * to try. To uphold the contention made here by Thornhill would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon agents who conscientiously try to carry out their mandates." '(Emphasis supplied.)

See also, *Coppage* v. *Woodward* (La App, 1958), 105 So 2d 306. We think the court's observations in *Doll* are likewise relevant in this case. Moreover,

the Supreme Court of Michigan has applied a similar rationale in sustaining the recovery of a broker's commission. See *Davis-Fisher Co.* v. *Hall, supra,* at 581. Since the amount of the commission due is not questioned on this appeal, we affirm the trial court's holding. *Cf. DeBoer* v. *Geib, supra,* at 545.

An additional ground, one not relied on by the trial court, compels us to reach this result. In *Roy Annett, Inc.* v. *Killin* (1961) 365 Mich 389, the Court construed a provision in a listing agreement which required payment of a commission "if said property is sold by the owner within 6 months thereafter to any person with whom said broker negotiated with respect to a sale during the term thereof." The provision is similar to that contained in paragraph two of the present agreement. The Court discussed the purpose of such provisions:

"As we read this agreement, it is  *  *  *  designed to protect the real-estate salesman's commission from subterfuge and fraud on the part of the seller." 365 Mich at 394.

In the present case, we believe that the provision requiring defendants to refer prospective purchasers to plaintiff is likewise designed to protect the broker from fraud and subterfuge. However, unlike the situation in *Roy Annett, Inc.* v. *Killin, supra,* see 365 Mich at 394, the record in this case "smack[s] of subterfuge." The record would support a finding that defendants' failure to refer the Vollmars to plaintiff was in bad faith and for the purpose of avoiding payment of a commission.

A final issue on this appeal is whether defendants are entitled to damages for plaintiff's allegedly wrongful attachment of defendants' property at the commencement of this action. In his affidavit for a writ of attachment, plaintiff asserted that he had

good reason to believe defendants were about to remove their property from the State with intent to defraud their creditors. The trial judge found:

"The facts did not justify plaintiff in concluding that defendants intended to defraud him. They merely justified a conclusion that defendants disagreed with plaintiff concerning their obligation to pay a commission and that they were going to Florida for causes wholly unrelated to the existence of plaintiff's disputed claim."

We are satisfied that the trial court's findings on this point are not clearly erroneous. GCR 1963, 517.1; *Tann* v. *Allied Van Lines, Inc.* (1966), 5 Mich App 309.

Affirmed. Costs to plaintiff-appellee.

All concurred.