**E & E MINING, INC., a Wyoming corporation, Appellant (Defendant),**

v.

**FLYING "D" GROUP, INC., a Wyoming corporation, Appellee (Plaintiff).**

**No. 85–260.**

Supreme Court of Wyoming.

April 29, 1986.

Norman E. Young of Hill, Young & Barton, Riverton, for appellant.

David B. Hooper of David B. Hooper, P.C., Riverton, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This appeal concerns a real estate broker's right to a commission under an exclusive-right-to-sell contract. The trial court entered judgment for the broker, resulting in the vendor's appeal to this Court.

We affirm.

In January 1982, appellant E & E Mining, Inc. entered into two listing agreements with a real estate brokerage firm, appellee Flying "D" Group, Inc., to sell a motel and adjacent vacant lot in Riverton, Wyoming. The listing prices were $800,000 for the motel and $97,000 for the lot. The agreements, which were to expire on June 22, 1982, provided for commissions of six percent on the motel and seven percent on the vacant lot.

Appellee expended approximately $1,500 and 85 hours attempting to sell the property. Although a number of potential buyers were contacted, there were no offers produced as a result of this work.

On or about June 17, 1982, Frank Espinosa, president of appellant, went to the office of James Soumas, his accountant, and entered into a discussion with Mr. Soumas and his wife concerning the sale of appellant's motel. During this discussion, Espinosa incorrectly stated that the listing agreements with appellee had expired. Soumas asked Espinosa if he would be interested in selling the motel to him and the amount for which he would sell it. Espinosa stated a price of $800,000. Espinosa told Soumas to make an offer if he was interested and to take the offer to his son, since he intended to travel to Alaska within the next day or so.

Espinosa left for Alaska on June 19, 1982, never informing appellee of the interest expressed by Soumas. While in Alaska, Espinosa negotiated by telephone with Soumas, and on July 7, 1982, Soumas' offer of $800,000 was accepted. Shortly thereafter, Espinosa requested that appellee's president sign a release waiving any right to a commission on the sale. The request was refused.

The sale between appellant and Soumas was closed for a purchase price of $800,000, of which $705,000 were allocated to the motel and $95,000 to the adjacent lot. Appellee then filed a complaint claiming that, under the listing contract, appellant had agreed to refer inquiries from all pro-

spective purchasers to appellee and that appellant's failure to refer Soumas was a breach of the contract. Appellee claimed that it was entitled to the agreed commission.

The pertinent portions of the listing agreements, which are entitled "EXCLUSIVE RIGHT TO SELL LISTING CONTRACT," provide:

"1. For and in consideration of the services of the hereinafter named real estate broker, I hereby list with said broker, from *Jan 22, 1982*, to *June 22, 1982*, inclusive, the property described below and I hereby grant said broker the exclusive and irrevocable right to sell the same within said time at the price and on the terms herein stated * * *. I further authorize said broker to advertise the property, show the property at reasonable times, and to list the property with any multiple listing service in which he is a participant and to accept the assistance and cooperation of other brokers, all at broker's expense.

"2. I hereby agree to pay said broker *SIX [seven]%* [1] of the selling price for his services:

"(a) In case of any sale or exchange of the subject property within said listing period by the undersigned owner, the said broker, or by any person; or

"(b) Upon the said broker committing in writing, within said listing period, a purchaser who is ready, willing and able to complete the purchase as proposed herein by the owner; or

"(c) In case of any such sale or exchange of said property within the *180* days subsequent to the expiration of this agreement to any party with whom the said broker negotiated and whose name was disclosed in writing to the owner by the broker during the listing period, such written notice to be delivered to owner within three (3) days after expiration of this listing agreement; * * *

\* \* \* \* \* \*

"13. The owner agrees to refer to the broker all inquiries from other brokers, salesmen and prospective purchasers received during the term of this listing."

The trial court found that the contract was not ambiguous, that Mr. Soumas was a prospective purchaser, and that appellant breached the contract by failing to inform appellee of the prospective purchaser. As a result of the breach, appellee was awarded $48,950—six percent of $705,000 plus seven percent of $95,000. After appellant's motion for a new trial or to alter or amend the judgment was denied, appellant brought this appeal, raising the following issues:

"1. The Court erred in finding the contract(s) commencing January 22, 1982, and ending June 22, 1982, were not ambiguous.

"2. The Court erred in finding, based on the June 18, 1982 conversation between Soumas and Espinosa that Soumas was a prospective purchaser and appellant breached the contract by not informing appellee of the prospective purchaser.

"3. The Court erred in assessing as damages caused by the alleged breach the full commission."

Appellant contends that under this Court's holding in *McCartney v. Malm*, Wyo., 627 P.2d 1014 (1981), these agreements were ambiguous. In *McCartney v. Malm*, we said that an agreement is ambiguous " 'which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' " 627 P.2d at 1019, quoting from *Bulis v. Wells*, Wyo., 565 P.2d 487, 490 (1977). Appellant maintains that appellee's president recognized the owner could sell the property unaided by appellee under paragraph 2. Yet, under paragraph 13, the owner was required to refer all inquiries to the broker. Paragraph 13 thus is inconsistent with paragraph 2 since it negates the owner's ability to sell unaided by the broker. According to appellant, this results in an am-

---

1. The listing agreement for the motel provided for a six percent commission, while the listing agreement for the lot provided for a seven percent commission.

biguous agreement under our definition in *McCartney v. Malm.*

■ The question of whether an ambiguity exists is a question of law to be determined by this Court. *Burk v. Burzynski*, Wyo., 672 P.2d 419 (1983). "* * * We are, therefore, at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other * * *." *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980). We will not assume the parties intended an inconsistency between two paragraphs in a contract. *Covey v. Covey's Little America, Inc.*, Wyo., 378 P.2d 506 (1963).

■ Despite appellant's arguments, the trial court found, and we agree, that there is no indefiniteness of expression or double meaning in this contract. Paragraph 13 requires that the owner refer all inquiries he receives to the broker. Paragraph 2 should not be read to do away with the owner's agreement to refer an inquiry to the broker, as that would assume the parties intended an inconsistency. Instead, we think it is clear that paragraph 2 merely recognizes that the owner might sell the property himself, unaided by the broker, and provides that, even in that event, the broker is still entitled to the stated commission. This does not make the contract ambiguous.

■ The trial court found that appellant breached paragraph 13 by failing to refer Mr. Soumas to appellee. In appellant's view, this finding is erroneous because Mr. Soumas was not a prospective purchaser until Espinosa learned of Soumas' written offer.

The trial court found persuasive the case of *Calka v. Donahoe*, 20 Mich.App. 120, 173 N.W.2d 811 (1970). *Calka v. Donahoe* appears to be on all fours with the case at bar. There the broker and owner entered into an exclusive-right-to-sell agreement in

which the owner agreed to " 'refer any prospective purchaser of whom he has knowledge,' " 173 N.W.2d at 813 (emphasis in original), during the term of the agreement to the broker. The owner was approached by Mr. Vollmar, who inquired about the property and declared that the asking price was too high. Later, Vollmar's father told the owner to contact him if the broker failed to sell the property. Shortly after the listing agreement expired, the Vollmars purchased the property.

The court in *Calka v. Donahoe* determined that the Vollmars were "prospective purchasers," because that term included anyone who showed an interest in the property, notwithstanding an expressed unwillingness to pay the contract price. This interpretation of prospective purchaser was held to be consistent with the very purpose of the clause requiring referral; i.e., to give the broker an opportunity to effectuate a sale to those who do not plan to pay the asking price by convincing them of the merits of the property.

Normally, construction and interpretation of contracts are for the court as a matter of law. *Mobil Coal Producing, Inc. v. Parks*, Wyo., 704 P.2d 702 (1985). If the contract is free from ambiguity, we need only look to the plain meaning of the words in our effort to ferret out the intention of the parties. *Bjork v. Chrysler Corporation*, Wyo., 702 P.2d 146 (1985). In *Calka v. Donahoe*, 173 N.W.2d at 814, the court noted that "prospective purchaser" is used interchangeably with "prospect." A prospect is "a potential buyer or customer" according to Webster's Third New International Dictionary (1961). The plain meaning of the term clearly includes those who ask the owner if he would sell the property to them. It is not limited to those who have made written offers. Interpreting "prospective purchaser" to include those who express interest at a price lower than that asked promotes the reason behind the referral clause.[2] The contract in question

---

**2.** Although the issue was not before this Court, we note that in the case of *Reed v. Taylor,* 78 Wyo. 216, 322 P.2d 147 (1958), we referred to

one who was interested in purchasing listed property at 75 percent of the asking price as a "prospect."

here gives the broker the exclusive right to sell. The owner agrees to refer all inquiries he receives to the broker so that the result both parties seek may be accomplished. Appellant contends that this interpretation is unduly burdensome to an owner, but this Court concludes that it is a simple matter to inform an inquirer of the existence of the agreement and to refer him to the broker. In fact, in the present case Espinosa told Soumas that the agreements had terminated.

In this case, Soumas clearly was a prospective purchaser. Soumas inquired as to the availability of the property. He asked the price for which appellant would sell it to him. Espinosa invited Soumas to make him an offer and apparently expected one soon, since he told Soumas it should be left with his son as Espinosa was traveling to Alaska in the next day or so. Soumas did in fact make an offer, and the offer was accepted within a few weeks of the June meeting. Under these circumstances, appellant's claim that Soumas was not "a prospective purchaser" cannot stand.[3]

■ Appellant's final claim is that the trial court erred in assessing the damages caused by the breach. Even assuming Espinosa had not informed appellee of a prospective purchaser, this failure did not deprive appellee of its commission, or its opportunity to earn the same. In appellant's view, *Leet v. Joder,* 75 Wyo. 225, 295 P.2d 733 (1956), states that the proper measure of damages is the loss or injury actually sustained rather than the price paid on full performance.

The portion of *Leet v. Joder* on which appellant relies did recognize that the injury or loss actually sustained may be the proper measure of damages for breach of a broker's contract. *Leet v. Joder* also recognized, however, that a broker is not limited to a suit for damages but may also sue

on a contract when the contract provides for a commission to the broker on any sale, whether made by the owner or the broker. See also 12 Am.Jur.2d, Brokers § 229 (1964); *Carlsen v. Zane,* 261 Cal.App.2d 399, 67 Cal.Rptr. 747 (1968); Annot., 88 A.L.R.2d 936 (1963). In the present case, appellee claimed to be due a commission on the sale by appellant. Clearly, when an exclusive-right-to-sell contract and a sale during the term of the contract are involved, the broker may recover the lost commission.

Appellee, in its claim for a commission, recognizes that there was no sale during the term of the contract and relies upon the 180-day extension clause. In considering the question of whether the breach of contract caused by the owner's failure to inform the broker of a prospective purchaser should, when there is a subsequent sale to that purchaser during the extension term, allow the broker to recover the agreed commission, the court in *Calka v. Donahoe* quoted from *Doll v. Thornhill,* La.App., 6 So.2d 793, 795 (1942):

" 'But above and beyond all of these facts we find that [the owner] clearly violated the plain provisions of his contract in not referring [the prospective buyer] to [the broker] as soon as the former evidenced any interest in the property. *It will not do for him to say that had he done so, no sale would have resulted.* A real estate agent is supposedly an expert in his business, and we must presume that he could have accomplished what [the owner] accomplished * * *. At any rate, he was entitled to try. To uphold the contention made here by [the owner] would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon agents who conscientiously try to

---

**3.** In support of its position, appellant relies on *Hobson v. Hunt,* 59 Cal.App. 679, 211 P. 242, 243 (1922), where the court stated that a prospective purchaser is "one to whom there was at least some probability of making a sale within a reasonable time." Under this definition the court in *Hobson v. Hunt* held that a person whose attention had never been called to the land could not properly have been named as a prospective purchaser. Although we do not find that this definition of prospective purchaser is applicable to the contracts in this case, we note that Soumas appears to fit within this definition.

carry out their mandates.' (Emphasis supplied.)" 173 N.W.2d at 815.

We agree with the *Doll v. Thornhill* court's observations. Had appellant not breached its agreement, appellee would have negotiated with Soumas and would have been entitled to its commission. The trial court correctly awarded appellee its lost commission.

Affirmed.