**J.C. NICHOLS COMPANY, Plaintiff,**

v.

**James and Sheryl OSBORN, Jr., Defendants.**

**No. 97–2138–JWL.**

United States District Court, D. Kansas.

June 23, 1998.

Douglas J. Schmidt, Linda I.T. Zabriskie, Blackwell, Sanders, Peper, Martin, LLP, Daniel M. Dibble, Timothy K. McNamara, David T.M. Powell, Lathrop & Gage L.C., Kansas City, MO, for Plaintiff.

Lee M. Smithyman, David J. Roberts, Smithyman & Zakoura, Chtd., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this diversity action, plaintiff real estate company has sued defendants for breach of contract to recover commissions on the sale of defendants' property. The matter is presently before the court on defendants' motion for summary judgment (Doc. 40). Because plaintiff may be entitled to recover the commissions as a result of defendants' breach of the contract's referral provision, the court denies the motion.

### I. Facts [1]

In 1995, defendants James and Sheryl Osborn owned two parcels of land, comprising 612 and 160 acres, in Johnson County, Kansas.[2] On November 2, 1995, defendants signed a contract with real estate broker Sandy Spalitto, who was acting on behalf of her employer, plaintiff J.C. Nichols Company, regarding the sale of the two parcels by defendants.[3] The contract, which was titled "Exclusive Right to Sell Agreement," stated in pertinent part as follows:

> In consideration of the efforts of the J.C. Nichols Company (the "broker") to find a purchaser for the property at [two parcels described here], the owner (whether one or more) hereby appoints the broker as agent with exclusive and irrevocable right to sell and for the purpose of finding buyers, for a period of 180 days from date hereof, at a sales price of $7500 per acre firm, or with owner's consent, oral or written, for a lesser sum or on other terms.

The parties further agree as follows:

> 1. Broker shall make an earnest effort to sell the property on the terms stated herein until such property is sold or this agreement expires, and owner shall refer any offer or inquiry which he may receive during the term of this agreement to the broker.

> 2. If a prospective Buyer, ready and willing to purchase the property pursuant hereto, or such other terms as owner shall accept, is found during the time this agreement is in full force, or if within 120 days after the termination date hereof the property is sold to anyone to whom it was shown by the broker, the owner shall pay to the broker a fee of 6% of the sales price as a commission.

The 180–day term of the agreement expired on April 30, 1996.

During the agency period, Ms. Spalitto showed the two parcels to a total of three people. One person submitted offers on the 160–acre parcel at a price of $5,500 per acre, to which defendants did not respond.

On April 28, 1996, developer Darol Rodrock telephoned defendant James Osborn. According to the deposition testimony of Mr.

---

1. In accordance with the applicable summary judgment standard, the facts are related in the light most favorable to plaintiff.

2. The 612–acre parcel was actually owned by defendants' company, Osborn Land & Cattle, L.L.C. For purposes of this motion, the parcels are both treated as if owned by defendants.

3. Defendants dispute that the contract included the 612–acre parcel; for purposes of their motion for summary judgment, however, defendants have assumed that the contract applied to both parcels.

Osborn, Mr. Rodrock stated that he had heard that Mr. Osborn had some property for sale. Mr. Osborn responded that if Mr. Rodrock meant the 160–acre parcel, he would have to speak with Ms. Spalitto.[4] Mr. Rodrock then stated that he was interested not in the 160–acre parcel, but in the 612–acre parcel. Mr. Osborn indicated that, although the parcel was not listed, he would consider selling it. Mr. Rodrock then stated that he would like to show the parcel to his wife and that, if she liked it, they might be interested in purchasing it. Mr. Osborn did not inform Ms. Spalitto of this conversation or Mr. Rodrock's interest in the 612–acre parcel.

On April 30, 1996, Mr. Rodrock telephoned Mr. Osborn to inform him that he and his wife were interested in purchasing the property. No price or terms were discussed, but the parties agreed to meet to discuss the purchase. On May 8, 1996, Mr. Osborn, Mr. Rodrock, and their attorneys met to begin negotiating the terms of the sale.

On May 8 or 11, 1996, Ms. Spalitto first learned that Mr. Rodrock was negotiating to purchase the 612–acre parcel. According to Ms. Spalitto's testimony, she then contacted Mr. Rodrock and told him about the 160–acre parcel. Mr. Rodrock stated that he had not been aware of the smaller parcel, but that he was not interested in the 160 acres because he could only afford to buy the 612–acre parcel.

Later in May, Mr. Rodrock unexpectedly received some proceeds from another real estate sale, and he determined that he could then purchase the 160–acre parcel as well. Mr. Rodrock informed defendants that he would purchase the bigger parcel only if the smaller parcel were sold to him as well. On May 25, 1996, Mr. Rodrock and defendants executed contracts for the sale of the two parcels, at prices of $8,072 per acre for a total of $4,940,000 on the 612–acre parcel, and $6,500 per acre for a total of $1,040,000 on the 160–acre parcel. Closings on the real estate occurred on January 3, 1997.

On May 21, 1996, plaintiff sent letters to defendants and Mr. Rodrock demanding payment of the commissions on the two parcels. In response to those letters, defendants and Mr. Rodrock agreed in their sale contracts that if plaintiff were due commissions, Mr. Rodrock would have insisted on receiving one-half of those commissions under the cooperative broker rules of the Johnson County Board of Realtors. In the contracts, Mr. Rodrock also assigned his interest in those commissions to defendants.

Defendants now seek summary judgment with respect to plaintiff's claims for commissions on the sale of both parcels. Defendants argue that plaintiff has not met the contract's requirements for recovery of a commission.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just,

---

**4.** Mr. Rodrock testified that he was not aware of the 160–acre parcel until his conversation with Ms. Spalitto in May.

speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Failure to Procure Sales

■ Defendants first argue that plaintiff is not entitled to any commission because its agent did not procure the sale. The court agrees that there is no evidence that Ms. Spalitto procured the sale of either parcel to Mr. Rodrock. Nevertheless, the court does not agree that plaintiff's recovery is therefore barred under the contract at issue, and thus summary judgment is not appropriate on this basis.

■ A real estate broker's entitlement to a commission depends on its contract. *Harrin v. Brown Realty Co.*, 226 Kan. 453, 459, 602 P.2d 79 (1979). As a general rule, a broker must be the "efficient and procuring cause" of the consummated transaction in order to earn its commission. *Winkelman v. Allen*, 214 Kan. 22, 29, 519 P.2d 1377 (1974). That rule does not apply in the case of an exclusive right to sell agreement, however. *See Foltz v. Begnoche*, 222 Kan. 383, 385–89, 565 P.2d 592 (1977).

In *Foltz*, the Kansas Supreme Court distinguished between an agreement granting a broker an "exclusive agency" and one granting an "exclusive right to sell:"

> An "exclusive agency" agreement listing real property for sale does not permit an owner to list his property with other brokers during the contractual term, but this does not prevent the owner from selling to a buyer procured on his own, unless the broker has procured a purchaser able and willing to buy prior to such time. The only effect of such a contract is to prevent the owner from placing the property in the hands of another agent. An "exclusive right to sell" agreement listing real property for sale forbids the owner from selling his property either by himself, or through another broker, without liability while the property is listed with the original broker.

*Id.* at 385–86, 565 P.2d 592. Defendants argue that the contract here granted plaintiff only an exclusive agency and so permitted them to sell the property themselves without liability to plaintiff. Plaintiff argues that the parties executed an exclusive right to sell agreement and that therefore its failure to procure the sales of defendants' parcels does not deprive it of its right to commissions on those sales.

In *Foltz*, the supreme court held that the agreement before it in that case was not an exclusive right to sell agreement. *Id.* at 388, 565 P.2d 592. First, the agreement was titled "Exclusive Listing Agreement;" the court noted that, although not controlling, the title of the agreement is important. *Id.* at 387, 565 P.2d 592. Second, although the agreement granted the broker the "exclusive right" to sell the property, "use of the phrase 'exclusive right,' standing alone, should not be determinative in creating an 'exclusive right to sell.'" *Id.* Third, the provision allowing a commission upon sale made "by you [the broker]" contemplated a sale by the owner without liability for a commission. *Id.* at 388, 565 P.2d 592. Finally, the agreement provided that the right to sell was given in consideration of the broker's agreement "to list" the property. *Id.* The court held that, in light of these factors, the agreement was ambiguous and therefore would be construed against the broker who drafted the agreement. *Id.* The court concluded as follows:

> Additionally, we are persuaded that an "exclusive right to sell," by its very nature, should be created only by clear and unambiguous language. The owner of property, frequently unfamiliar with the terminology of brokerage transactions, should not be held to give up his right to sell his own property, unless the broker's contract in some way or other imposes liability upon the owner for payment of a commission in the event of a sale by the owner, either expressly or by the grant to the broker of such exclusive right as the court may deem necessarily implies such liability. Therefore, a real estate broker seeking to create an "exclusive right to sell" in which the owner may not sell his property without paying the broker a commission, whether or not the broker procured the buyer, must do so in clear and unambiguous language within the four corners of the written brokerage contract.

*Id.* at 388–89, 565 P.2d 592 (citations omitted).

■ The court concludes that the agreement between plaintiff and defendants unambiguously gave plaintiff an exclusive right to sell the property. The contract here was titled "Exclusive Right to Sell Agreement" and expressly granted the broker the "exclusive and irrevocable right to sell" the parcels. In addition, the contract provided that the broker would receive a commission if a buyer was "found;" it did not require that the buyer be found "by the broker." Thus, the contract did not contain any of the provisions that made the agreement in *Foltz* ambiguous.

Finally, the contract also required defendants to refer all offers and inquiries concerning the parcels to the broker. That provision further indicates that defendants could not sell the property on their own without liability. *See Hammond v. C.I.T. Fin. Corp.,* 203 F.2d 705, 707 (2d Cir.1953) (construction of brokerage contract as an exclusive right to sell agreement was reasonable in view of a referral provision contained therein); *Kislak Co. v. Geldzahler,* 210 N.J.Super. 255, 509 A.2d 320, 326 (1985) ("[T]he presence of a referral term has been recognized as an essential component of an exclusive agreement so much so that it has been found, of itself, to confer upon a broker the exclusive right to sell."); *Doll v. Thornhill,* 6 So.2d 793, 795 (La.Ct.App.1942) (effect of referral provision was that the owner could not trade directly with prospective purchasers); *Gaillard Realty Co. v. Rogers Wire Works,* 215 A.D. 326, 213 N.Y.S. 616, 621 (N.Y.App.Div.1926) (referral clause made the contract an exclusive right to sell agreement); *E & E Mining, Inc. v. Flying "D" Group, Inc.,* 718 P.2d 58, 61 (Wyo.1986) (agreement with referral clause unambiguously granted an exclusive right to sell); *see also* C.C. Marvel, Annotation, *"Exclusive right to sell" and other terms in real-estate broker's contract as excluding owner's right of sale,* 88 A.L.R.2d 936, 961 (1963) (listing cases in which a referral provision was deemed to exclude a sale by the owner without liability to the broker).

The title and express language of the contract, the referral provision, and the lack of any language to the contrary convince the court that the parties clearly and unambiguously executed an exclusive right to sell agreement. That agreement necessarily implied that defendants could not sell the listed property without paying plaintiff a commission. Therefore, the fact that plaintiff did not procure the sales here is not relevant to plaintiff's claims for commissions, and defendants are not entitled to summary judgment on that basis.

**B. Contractual Bases for Commission**

Defendants next argue that summary judgment is appropriate because plaintiff did not satisfy either contractual basis for payment of a commission. The contract provided:

> If a prospective Buyer, ready and willing to purchase the property pursuant hereto, or such other terms as owner shall accept, is found during the time this agreement is in full force, or if within 120 days after the termination date hereof the property is sold to anyone to whom it was shown by the broker, the owner shall pay to the broker a fee of 6% of the sales price as a commission.

The agreement expired on April 30, 1996, and the parcels were sold in May 1996. It is undisputed that Ms. Spalitto did not show the parcels to Mr. Rodrock; thus, plaintiff did not satisfy the second basis for a commission.

Defendants argue that plaintiff did not satisfy the first basis for a commission because a "ready and willing" buyer was not found by April 30. By that time, Mr. Rodrock had expressed interest in the 612–acre parcel, but no terms had been discussed. Mr. Rodrock was not yet interested in the 160–acre parcel on April 30.

Plaintiff argues it need not show that Mr. Rodrock was ready and willing to purchase the property because he in fact purchased the two parcels. Plaintiff cites two Missouri cases for the proposition that the issue of a prospective purchaser's readiness, willingness, and ability is eliminated if a deal with that purchaser is actually consummated. *See Kelly v. Craigmiles,* 460 S.W.2d 577, 581–82 (Mo.1970); *Shephard v. Hunter,* 508 S.W.2d 234, 238 (Mo.Ct.App.1974); *see also* 12 Am. Jur.2d *Brokers* § 225 (1997) (if deal is consummated, the question of the purchaser's

ability, readiness, and willingness is no longer material); 12 C.J.S. *Brokers* § 152 (1980) (same).

 The court agrees that, ordinarily, a person's readiness and willingness would no longer be at issue if that person purchased the property. That is because the purchase itself indicates the person's readiness and willingness to purchase. *See* 12 C.J.S. *Brokers* § 152 (acceptance is conclusive on such issue). Thus, the question whether a prospective purchaser was ready, willing, and able to purchase the property—and so whether the broker is entitled to a commission—would ordinarily arise only when the deal has fallen through or the property has been sold to someone else. *See id.* (as a general rule, a broker is not entitled to a commission where no sale is made unless he produces a ready, willing, and able purchaser).

In this case, however, the "ready and willing" requirement remains because of the timing issue. There is no doubt that at some point Mr. Rodrock was ready and willing to purchase the two parcels. The question for purposes of satisfying the first contractual basis for a commission is whether Mr. Rodrock was ready and willing to purchase the parcels by April 30. That is because the contract required that a buyer ready and willing to purchase the property on terms acceptable to defendants be found during the period of the agreement. Therefore, the cases (which did not involve this issue of timing) and the general rule obviating a showing of readiness and willingness (which contemplates an unsuccessful purchase) do not apply here.

 The court agrees with defendants that plaintiff has provided no evidence that Mr. Rodrock was ready and willing to purchase the parcels on April 30, 1996. Certainly, Mr. Rodrock was not ready and willing to purchase the 160–acre parcel by then; it is uncontroverted that Mr. Rodrock had no interest in that parcel until sometime in May. With respect to the 612–acre parcel, Mr. Rodrock told Mr. Osborn that he was interested in purchasing the land by April 30, but no terms were discussed; rather, the two men agreed to meet at a later date to negotiate the sale. Therefore, Mr. Rodrock cannot be said to have been ready and willing to purchase the 612–acre parcel *on terms acceptable to defendants* by April 30 because he did not yet know what terms defendants would accept. In fact, the sale of the 612–acre parcel eventually became tied to the sale of the 160–acre parcel, and as stated above, Mr. Rodrock was not interested in the smaller parcel on April 30. Therefore, a ready and willing purchaser was not found by April 30, and plaintiff did not satisfy the contract's first basis for payment of a commission. *See Campbell v. Fowler,* 214 Kan. 491, 496–98, 520 P.2d 1285 (1974) (whether the buyer was ready, willing, and able to buy on terms satisfactory to the seller depended on whether the buyer and the seller had a meeting of the minds on terms satisfactory to both parties).

*C. Breach of Referral Provision*

Thus, plaintiff did not satisfy either basis set out in the contract for payment of a commission. Nevertheless, the court concludes that defendants are not entitled to summary judgment because defendants breached the referral provision of the contract.

The contract between the parties required defendants to "refer any offer or inquiry" received during the term of the agreement to plaintiff. It is uncontroverted that Mr. Rodrock inquired about the 612–acre parcel before April 30, 1996, when the agreement expired, and that defendants failed to refer that inquiry to Ms. Spalitto. Thus, it is clear that if the listing agreement included the 612–acre parcel, as defendants have assumed for purposes of this motion, then defendants breached their duty to refer Mr. Rodrock's inquiry concerning that parcel to plaintiff.

The court must then consider the effect of that breach. No reported Kansas case has addressed this issue. It appears, however, that every court that has considered the issue has ruled that under circumstances such as these, where the seller has breached a referral provision and then sold the property without the broker, the seller's breach entitles the broker to the commission set out in the agreement.

In *Gaillard Realty Co. v. Rogers Wire Works,* 215 A.D. 326, 213 N.Y.S. 616

(N.Y.App.Div.1926), the seller breached a referral clause in its contract with its broker and sold the property without notifying the broker. *Id.* at 620. The court held that the broker could recover the commissions to which it would have been entitled in the absence of the breach of the referral provision. *Id.* at 622.

In *Doll v. Thornhill,* 6 So.2d 793 (La.Ct. App.1942), the seller's contract with the broker contained a referral provision. *Id.* at 793. The seller failed to refer an offer he received to the broker, and instead reached an agreement to sell the property if the broker did not find a different purchaser within the term of the brokerage contract. *Id.* at 794. The court held that the seller violated the referral provision of the contract, rejecting the argument that the eventual sale contract would not have come through had the buyer been referred to the broker:

> [W]e find that Thornhill clearly violated the plain provisions of his contract in not referring Bankston to Doll as soon as the former evidenced any interest in the property. It will not do for him to say that had he done so, no sale would have resulted. A real estate agent is supposedly an expert in his business, and we must presume that he could have accomplished what Thornhill accomplished, or that he could have persuaded one of the parties to recede sufficiently from his position for the consummation of a trade. At any rate, he was entitled to the opportunity to try. To uphold the contention made here by Thornhill would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon agents who conscientiously try to carry out their mandates.

*Id.* at 795. The court concluded that when the seller breached the contract by failing to refer the buyer to the broker and then made the sale himself, "he made himself liable to [the broker] for the stipulated commission." *Id.* at 796.

In *Hammond v. C.I.T. Financial Corp.,* 203 F.2d 705 (2d Cir.1953), the Second Circuit held that a seller breached the referral provision in an exclusive right to sell contract. *Id.* at 708. On that basis, the court upheld the district court's award of damages in the amount of the commission set forth in the contract. *Id.*

Like the present case, *Calka v. Donahoe,* 20 Mich.App. 120, 173 N.W.2d 811 (1969), involved the breach of a referral clause and a sale after the term of the agreement with the broker. *Id.* at 814. The court, citing *Doll,* affirmed an award of the broker's commission. *Id.* at 815 (quoting the above excerpt from *Doll* ).

Similarly, in *Kislak Co. v. Geldzahler,* 210 N.J.Super. 255, 509 A.2d 320 (1985), the exclusive right to sell agreement at issue contained a referral provision, which the seller violated. *Id.* at 322–24. The court then addressed the issue of the amount to which the broker was entitled by virtue of that breach. *Id.* at 325. After reviewing the caselaw, the court found the opinions in *Gaillard, Doll,* and *Hammond* to be persuasive. *Id.* at 326. The court found no reason to distinguish, for purposes of damages, between the breach of a referral provision in the. event of a sale *after* the period of the agreement and the breach of a term providing for a commission if the property is sold *during* the period of the agreement. *Id.* Thus, the court held that "[t]he appropriate measure of damages for breach of a term requiring referral of all inquiries to the listing broker, which is part and parcel of the exclusive agreement, is the stipulated commission in that agreement." *Id.*

The case of *E & E Mining, Inc. v. Flying "D" Group, Inc.,* 718 P.2d 58 (Wyo.1986), is also directly on point. That court first noted that a broker could recover its commission under an exclusive right to sell contract if the seller sold the property without the broker during the contract period. *Id.* at 62. The court then decided to follow *Calka* and *Doll* and held that, in the event of a breach of a referral provision and a sale *after* the contract period, the broker would still be entitled to the commission. *Id.* at 62–63.

Finally, in *Boulos Co. v. McDevitt,* 522 A.2d 1301 (Me.1987), the seller violated a referral provision and sold the property during the contract's extension period through another broker. *Id.* at 1302. The court affirmed the judgment by which the first broker had been awarded its commission under the contract. *Id.*

Defendants cite to *Acadian Investment Co. v. Laird,* 138 So.2d 429 (La.Ct.App.1962), as a case in which the broker was denied its commission. That case actually supports plaintiff's position here, however. In *Acadian,* the seller did not refer a prospect as required in the brokerage contract and sold the property to the prospect after the contract period. *Id.* at 430. The court, citing *Doll,* noted as follows:

> Further, in holding the seller liable for a commission to a real estate agent for property sold subsequent to expiration of an exclusive listing agreement, the courts have placed great emphasis upon a violation by the seller of his contractual obligation to refer all offers to purchase to the real estate agent during the pendency of the agreement and have disallowed argument that under the circumstances the private negotiations did not actually interfere in any way with the real estate agent's efforts.

*Id.* at 431. The court quoted the following from the trial court's opinion in the case with approval:

> Upon examination, it appears that somewhat varying bases were used in the cited cases for the holdings that the property owner became liable for the commission by dealing directly and not referring his prospects. However, the dominant thought appears to be that in such cases the owner has breached the contract by interfering with the agent and depriving him of the opportunity of contacting the prospect and arranging the sale himself as he was employed to do.

*Id.* at 431–32. The court then adopted the trial court's conclusion that the case before it was different because the broker had in fact learned about the prospect and called upon him, but made no attempt to make the sale; thus, the broker had not been deprived, by reason of the seller's breach, of the opportunity to effect the sale, and therefore the broker was not entitled to the commission. *Id.* at 432.

Thus, in *Acadian,* the court reaffirmed the general rule that a broker may recover its commission if the seller breaches a referral provision and then sells the property after the period of the agreement. Unlike the broker there, plaintiff in this case did not learn about the inquiry within the contract period. Defendants did interfere here and deprive plaintiff of the opportunity to satisfy the contractual requirements for a commission on the sale to Mr. Rodrock. Therefore, under the reasoning in *Acadian,* the general rule would apply and plaintiff could recover its commission.

Defendants also note that the sellers in *Kislak* and *Doll* acted in bad faith in refusing to refer the prospects. They argue that they failed to refer Mr. Rodrock's inquiry to plaintiff because of their belief that the agreement with plaintiff did not cover the 612–acre parcel, and that bad faith is therefore missing in the present case. In none of the cases discussed above, however, did the court rely on the presence of bad faith on the part of the seller in permitting the broker to recover its commission. In *Doll,* the court noted facts evidencing the seller's bad faith, but stated that those facts were not material in light of the breach of the referral provision. *See Doll,* 6 So.2d at 795. In *Kislak,* in fact, the court *rejected* an argument that bad faith was required. *See Kislak,* 509 A.2d at 325–26. As noted in *Acadian,* brokers have been allowed to recover commissions in these circumstances not because of the seller's bad faith, but because the brokers' opportunities to earn the commissions have been taken away.

■ The court finds the cases discussed above to be persuasive on this issue. It concludes that the Kansas Supreme Court, if faced with the issue, would hold that a broker is entitled to recover its commission under an exclusive right to sell agreement if the seller breached a referral provision during the period of the agreement and then sold the property on the seller's own after the period of the agreement. In this case, because defendants failed to refer Mr. Rodrock's inquiry about the 612–acre parcel, made during the period of the agreement, to plaintiff, they breached the referral provision and deprived plaintiff of the opportunity to show Mr. Rodrock the property. Plaintiff could therefore recover its commission under the agreement on the sale of the 612–acre parcel. Accordingly, summary judgment is not appropriate in favor of defendants on plaintiff's claim for a commission on that sale.

The court must then consider plaintiff's claim for a commission on the sale of the 160–acre parcel. Mr. Rodrock did not inquire about the smaller parcel, and defendants therefore did not breach the referral provision as it related to that piece of land.

Nevertheless, plaintiff argues that if defendants would have referred Mr. Rodrock's inquiry about the 612–acre parcel, Ms. Spalitto would have shown him both parcels before the expiration of the agreement, and plaintiff would therefore have earned a commission on a sale of the 160–acre parcel during the extension period. The court construes plaintiff's argument on this issue as a claim for consequential damages, in the amount of the commission on the smaller parcel, for the breach of the referral clause with respect to the larger parcel. The parties have not addressed the viability of such a claim here. Thus, judgment for defendants on plaintiff's claim for a commission on the sale of the 160–acre parcel is not appropriate at this time.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (Doc. 40) is denied.

**IT IS SO ORDERED.**